James O. GERST, Savings and Loan Com-
missioner of Texas, et al., Petitioners,

v.

OAK CLIFF SAVINGS AND LOAN
ASSOCIATION, Respondent.

No. B–636.

Supreme Court of Texas.

June 26, 1968.

Rehearing Denied July 24, 1968.

authority to establish the branch office may be summarized as follows:

> "[T]he Commissioner finds that there is no public need for the proposed branch office; the volume of business in the community in which the proposed branch office would conduct its business is not such as to indicate a profitable operation; the establishment of the proposed branch office would result in undue harm to existing associations; and the proposed location of the additional office is not within the same county as the principal or home office of the applicant association, and the community in which such additional office is to be located is being adequately served by savings and loan office facilities."

More specifically, the order of the Commissioner denying the application contains the finding:

> "From the testimony adduced at the hearing, the Commissioner finds that the Southwest Quadrant of the City of Fort Worth (including the two mile radius centered on 3526 Bluebonnet Circle) and the City of Fort Worth, are, at present, being adequately served by existing savings and loan associations."

On February 25, 1966, Oak Cliff filed this suit for judicial review of the Commissioner's order under the provisions of Article 852a, Section 11.12, Vernon's Annotated Civil Statutes.[1] The six intervening associations, with their principal office in Fort Worth, Texas, appeared in this suit, and aligned themselves with the Commissioner in support of his order denying the application.

Oak Cliff alleged that each of the above findings of the Commissioner was not supported by, nor based upon substantial evidence and, therefore, the order was arbitrary and capricious and as such was invalid and of no legal force and effect. Oak Cliff further alleged that on November 15,

Crawford C. Martin, Atty. Gen., Sam Kelley and Robert C. Flowers, Asst. Attys. Gen., Clark, Thomas, Harris, Denius & Winters, Mary Jo Carroll and Con P. Werkenthin, Austin, for petitioners.

Jacobsen & Long, Joe R. Long, Austin, Turner, Rogers, Winn, Scurlock & Terry, James R. Rodgers, Dallas, for respondent.

SMITH, Justice.

Oak Cliff Savings and Loan Association of Dallas County, with its principal office in the City of Dallas, applied to the Savings and Loan Commissioner of the State of Texas for authority to establish a branch office at 3526 Bluebonnet Circle in the southwest quadrant of the City of Fort Worth, Tarrant County, Texas. Six savings and loan associations with their home offices in Tarrant County were granted leave to intervene in opposition to the Oak Cliff application. After notice and hearing, the Commissioner, on January 21, 1966, denied the application. The findings of the Commissioner pertinent to the denial of

---

1. All statutes are referred to by the article number under which they appear in Vernon's Annotated Texas Civil Statutes.

1963, pursuant to Article 342-114,[2] as supplemented by the applicable provisions of Article 852a,[3] the members of the Building and Loan Section of the Texas Finance Commission and the then qualified and acting Savings and Loan Commissioner, promulgated certain rules and regulations for savings and loan associations, including Subsection (f) of Section 2.4, Chapter 2. Oak Cliff alleged that the Commissioner based his decision in whole or in part upon this particular Subsection. Section 2.4 reads:

"The Commissioner shall approve an application for a branch office if he shall have affirmatively found from the data furnished with the application, the evidence adduced at the hearing and his official records that:

(f) the proposed location of the additional office is within the same county as the principal or home office of the applying association *except* in cases where it appears that the proposed additional office is to be in a different county from that in which the principal or home office of the applying association is located and there is no other association, either State or Federal, adequately serving the community in which such additional office is to be located." (Emphasis added.)

Oak Cliff alleged that the order of January 21, 1966, refusing the application, was void insofar as it is based upon Section 2.4(f) for the reason that the Building and Loan Section of the Finance Commission unlawfully exceeded its authority by and through the promulgation of such rule and regulation. Oak Cliff alleged that the Commissioner erred in basing his decision, in whole, or in part, upon said Section for the further reason

"that said regulation is arbitrary and discriminatory against savings and loan associations whose home offices happen to be outside of the county of the proposed branch and that such discrimination is in violation of the 'equal rights' provision of Article I, Section 3 of the Texas Constitution and in violation of the 'equal protection of the laws' provisions of the 14th Amendment to the United States Constitution."

All matters of fact as well as of law were submitted to the Court. The Court found "that the order entered by the Defendant Savings and Loan Commissioner on January 21, 1966, refusing the application of Oak Cliff Savings & Loan Association for a branch office to be located at 3526 Bluebonnet Circle, Fort Worth, Tarrant County, Texas, should be set aside." The trial court entered its judgment that the order of the Commissioner refusing the application was null and void and ordered that the matter be remanded to the Savings and Loan Commissioner of Texas for such further proceedings as may be necessary, not inconsistent with the Court's judgment. The court of civil appeals has affirmed, 421 S.W.2d 449, holding that Section 2.4(f) was invalid, and that the other findings upon which the Commissioner's denial was based were without support in substantial evidence. The Court of Civil Appeals has held that the Commissioner's consideration of the requirement of Section 2.4(f), commonly referred to as the "County Line Rule," increased the burden of Oak Cliff by

2. "The Building and Loan Section, through resolution adopted by not less than two affirmative votes, may promulgate general rules and regulations *not inconsistent with the Constitution and Statutes of this State,* and from time to time amend the same, which rules and regulations shall be applicable alike to all State associations * * *" *(Emphasis added.)*

3. "The Commissioner and the Building and Loan Section of the Finance Commission, acting pursuant to the rule-making power delegated by House Bill No. 91, Chapter 198, Acts of the Fifty-seventh Legislature, Regular Session, 1961, as the same may be amended shall, from time to time, promulgate such rules and regulations in respect to loans by associations operating under this law as may be reasonably necessary * * *."

injecting irrelevant factors contained in a rule which runs counter to the statutory requirements contained in Section 2.08 [4] of Article 852a. The intermediate court reasoned that since the rule was void, the question of whether or not the Commissioner's order was reasonably supported by substantial evidence must be determined without regard to the findings relative to Section 2.4 (f). This holding led to the ultimate conclusion that there was "no substantial evidence that the proposed operation will not be profitable or that the volume of business in the community is not such as to indicate success of the proposed" branch office.

The Commissioner and the intervenors, in their application for writ of error, challenge the holdings of the courts below with points, (1) that Section 2.4(f) is a valid and subsisting rule adopted by the Building and Loan Section of the Finance Commission under authority of Article 342–114; and, (2) the order of the Commissioner is supported by substantial evidence regardless of whether or not consideration is given to Section 2.4(f) of the Rules and Regulations for savings and loan associations. We have concluded to reverse the judgments of the courts below and render judgment that Oak Cliff take nothing by its suit.

We shall first dispose of the question of the validity of Section 2.4(f). All parties concede that the Building and Loan Section of the Finance Commission has rule-making power, but Oak Cliff contends that "such rules and regulations must be limited in content to matters not inconsistent with the Texas Constitution and governing statutes." While Oak Cliff recognizes that the provisions of Article 342–114 grant to the Building and Loan Section of the Finance Commission of Texas full and complete rule-making power, it argues that such rules and regulations are subject to challenge for various reasons. Oak Cliff contends that the Building and Loan Section of the Finance Commission unlawfully exceeded its authority by the promulgation of Rule 2.4(f) in that such rule, if upheld, makes a "more onerous requirement for the establishment of branch offices in counties other than the county of domicile of the home office of the applying association."

In determining whether or not the Building and Loan Section of the Finance Commission has exceeded the broad authority granted by Article 342–114 to promulgate general rules and regulations, the court of civil appeals has adopted a rather restricted view in holding that Rule 2.4(f) bears no logical relationship to the ultimate fact or conclusion sought to be

---

4. "The Commissioner shall not approve any charter application unless he shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and his official records that:

(1) the prerequisites, where applicable, set forth in Sections 2.02, 2.03, 2.04, 2.05, and 2.06 have been complied with and that the Articles of incorporation comply with all other provisions of this Act;

(2) the character, responsibility and general fitness of the persons named in the Articles of incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act and that the proposed association will have qualified fulltime management;

(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

(4) the operation of the proposed association will not unduly harm any existing association.

If the Commissioner so finds, he shall state his findings in writing and issue under his official seal a certificate of incorporation and deliver a copy of the approved Articles of incorporation and bylaws to the incorporators and retain a copy thereof as a permanent file of his office, whereupon the proposed association shall be a corporate body with perpetual existence unless terminated by law and may exercise the powers of a savings and loan association as herein set forth."

established. The court of civil appeals has concluded that Rule 2.4(f), commonly referred to as the "County Line Rule," is a requirement in addition to the statutory requirements enumerated in Section 2.08 of Article 852a only, rather than giving to the Administrative Agency the right to supplement the statute or to incorporate in specific regulations the public policy of the State as declared in Article 852a as a whole. It was never the intention of the Legislature to cause the Building and Loan Section of the Finance Commission to operate in a straight jacket in exercising its rulemaking powers granted under Article 342–114. In exercising the powers and the broad authority granted by the Legislature, the only requirement is that rules and regulations must be consistent with the Constitution and Statutes of this State. Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957). In *Kee*, we said:

"Broad regulatory powers, many of which are somewhat discriminatory in nature, are delegated to the Texas State Board of Examiners in Optometry * *. Article 4556 * * * provides that 'The Board shall have the power to make such rules and regulations not inconsistent with this law as may be necessary for the performance of its duties, the regulation of the practice of optometry and the enforcement of this Act.' "

The determining factor in this and other decisions of our courts dealing with the question of whether or not a particular administrative agency has exceeded its rule-making powers is that the rule's provisions must be in harmony with the general objectives of the Act involved. In Texas State Board of Examiners in Optometry v. Carp, 412 S.W.2d 307 (Tex.Sup.1967), we held that the Rule's provision were in harmony with the general objectives of the Act and referable to and consistent with one or more of its specific proscriptions.

"We believe that the Legislature, by investing the Board with broad rulemaking powers '[for] the enforcement of this Act' and '[for] the regulation of the practice of optometry,' contemplated that the Board would use these powers to correct the evils generally classified in Article 4563, or some other provision of the Optometry Act."

In Texas Liquor Control Board v. Super Savings Stamp Company, 303 S.W.2d 536, Tex.Civ.App., (1957, writ ref'd, n. r. e.), the Court, in recognizing that the Board had been clothed with the power and authority to promulgate and enforce rules and regulations necessary to carry out the purposes of the Act, held that the Legislature, in creating the Board and conferring upon it the power to make rules and regulations necessary to carry out the purposes of the Act, forecloses the thought that the Legislature intended to spell out the details of all operations under the Act.

■ We think that Section 2.4(f) provides a detail which is completely in harmony with the general provisions of Article 852a. In determining the validity of Section 2.4(f) we must adhere to the rule which requires a court to give consideration to all applicable sections of an article, in this instance, Article 852a. The Court of Civil Appeals has failed to recognize that courts shall not look solely to one particular section of the Act, but must look to all applicable provisions of the Act. The Court of Civil Appeals, in holding that the "County Line Rule" is invalid, has assigned as its reason that it is "a requirement in addition to the statutory requirements enumerated in Section 2.08 of Article 852a."

The Legislature, in enacting Article 852a, the Savings and Loan Act, originally Article 881a, did not specifically detail the requirements for the opening of branch offices, however, the power to approve or disapprove the establishment of branch offices is implied. Southwestern Savings and Loan Ass'n of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917 (1960). Section 2.13 of Article 852a clearly provides that no branch office may be established without the approval of the Commissioner. Here, again,

the Legislature left the matter of spelling out the details to the discretion of the Building and Loan Section of the Finance Commission. In adopting Section 2.4(f) of the rules and regulations, the Building and Loan Section exercised this discretion in a manner well within the framework of Section 2.08. The Legislature, in failing to enact the specific provisions, intended instead to provide a better method for the Building and Loan Section of the Finance Commission to regulate the granting of branch offices by the Commissioner. Section 2.4(f) of the rules and regulations is a specific authorization by the Building and Loan Section of the Finance Commission to the Commissioner.

We think the promulgation of the rule was within the powers delegated to the Building and Loan Section of the Finance Commission. The rule is neither arbitrary, capricious nor unreasonable. Rule 2.4(f) is in perfect harmony with the general objectives of Article 852a to grant savings and loan branches only where it is shown there is a public need for the proposed branch, and the operation of the proposed branch office will not harmfully interfere with adequate service being rendered the community or area in which the additional office is to be located. See Benson v. San Antonio Savings Ass'n, 374 S.W.2d 423 (Tex.1963). Therefore, we hold adversely to respondent's contention, upheld by the courts below, that Section 2.4(f) is void.

We turn now to the only remaining question in the case. Is the Commissioner's order supported by substantial evidence adduced at the hearing held before that officer? As heretofore indicated, petitioner's second and last point asserts that there is in the record before the Commissioner substantial evidence to support the order denying Oak Cliff's application for authority to establish a branch office in the area in question. We agree. Under the provisions of Article 852a, the Court's review shall be confined to the record made at the hearing before the Commissioner rather than upon the record made in the Trial Court. This was clearly held in Gerst v. Nixon, 411 S.W.2d 350 (Tex.Sup., 1966), wherein we said:

"The substantial procedural change [made] * * * by the 1963 Act [Article 852a] was to make the record of the Commissioner's hearing rather than evidence produced originally in court the basis from which it must be determined if the evidence conclusively required affirmative findings * * *."

Otherwise, the method of review announced in such cases as Gerst v. Cain, 388 S.W.2d 168 (Tex.Sup., 1965); Phillips v. Brazosport Savings and Loan Ass'n, 366 S.W.2d 929 (Tex.Sup., 1963); Board of Firemen's Relief & Retirement Fund, etc. v. Marks, 150 Tex. 433, 242 S.W.2d 181, 27 A.L.R.2d 965 (1951); and Hawkins v. Texas Co., 146 Tex. 511, 209 S.W.2d 338 (1948), remains unchanged. In *Phillips*, supra, the Court said:

"Review under the substantial evidence rule entails the following principles: The order of the Commissioner is presumed to be valid. The courts may not substitute their discretion for that delegated to the Commissioner by the Legislature; thus, the only question before the trial court is whether the Commissioner's decision was arbitrary and made without regard to facts."

In our case, as in Gerst v. Cain, supra, since the Commissioner refused Oak Cliff's application for the establishment of the branch office to be located in the area described, the burden was on Oak Cliff to establish that the refusal of the Commissioner to make affirmative findings entitling it to the branch office was arbitrary or capricious. Oak Cliff has not discharged this burden. As was said in Gerst v. Cain, supra, each substantial evidence case must be decided upon its own facts. It is argued that the facts in the present case require the same result as that reached in Gerst v. Nixon, supra, and Gerst v. Cain, supra. We cannot agree. Those cases, in our opinion,

presented an entirely different factual background than ours. We shall not attempt to set out in this opinion all of the evidence going to show that the Commissioner's order is supported by substantial evidence, and, therefore, was not arbitrary or capricious. In Gerst v. Cain, supra, after summarizing the evidence, we held there was no evidence that the chartering of Metropolitan would provide excessive competition for existing associations which would result in undue injury to them. In that case, we had under consideration a claim that Surety Savings & Loan Association, a new association in downtown Houston, would be unduly injured in that the chartering of Metropolitan would "make it more difficult for Surety to increase its volume of savings to a satisfactory level." We held that "proof of nothing more than that chartering a new association will make it 'more difficult' for an existing new association to increase its savings to 'a satisfactory' level" cannot constitute substantial evidence to support a finding of undue injury to the association. We went on to emphasize that Surety in the first fifteen months of its existence had accumulated savings and mortgage loans in the sum of $5,000,000; and that the "evidence of Houston's dynamic population and economic growth, experienced in recent years and forecast for the immediate future, leaves little basis for Surety's concern." In Gerst v. Nixon, supra, the applicant sought to establish a new savings and loan association at Livingston in Polk County. The Southeast Texas Savings and Loan Association of Woodville, Tyler County, Texas, opposed the granting of the charter. We held that Southeast Texas Savings, a well-managed association, was rendering a beneficial service to the residents of Tyler County, but that no such service was being rendered to the people of Livingston and Polk County. Certainly, in such a situation there was a public need for a savings and loan association in Polk County. After referring to the fact that in all probability a dam on the Trinity River near Livingston would be constructed and a paper mill and other industrial plants would be located in Polk County, we held:

"In substance, the 'injury' resulting to Southeast Texas by the granting of a charter to a Livingston association would be related solely to competition for future business. The probable slowing down of the rate of growth of an existing association because of a lessened opportunity to obtain business in a prospectively developing area because of competition cannot be regarded as an injury to such existing association."

In our case, the facts reflect a different picture than the facts portrayed in either of the cases just discussed. The area involved here is in no way comparable to the area involved in those cases so far as public need is concerned. Livingston had no local savings and loan association. On the other hand, the City of Houston had associations, but the area of the City in which Surety was located and Metropolitan was proposed to be located had been and was experiencing a tremendous growth. In our case there was evidence that Fort Worth was being adequately served, particularly adequate service was being rendered in the southwest quadrant of the City of Fort Worth. It is impractical to set out all of the evidence which supports the Commissioner's findings. We have examined such evidence and hold that the negative findings of the Commissioner are supported by substantial evidence. These findings, the factual portions of which are supported by substantial evidence, read:

"From the testimony adduced at the hearing the Commissioner finds that it has not been established that there exists any public need for an additional full service facility to serve the southwest quadrant of the City of Fort Worth [C.H.R. 245–246, 279–289], nor is there a sufficient rate of growth to sustain a profitable operation for the proposed facility without unduly cutting into the business being served by existing institutions [C.H.R. 246, 248–256]. It was shown

that this area is presently being served by four full service branch offices of savings and loan associations [C.H.R. 280–289], a real estate loan agency of the applicant, and seven commercial banking institutions [C.H.R. 280], all located within its boundaries, in addition to being served by the downtown main offices of six savings and loan associations plus the downtown branch of an additional association [C.H.R. 279]. In this connection, it should also be noted that the Commissioner finds that a substantial portion of the southwest quadrant area claimed by applicants, is more directly accessible to, and adequately served by downtown locations, than would be the case at the proposed site [C.H.R. 287–288]. This area had a population in 1960 of 111,664 persons and had shown a modest growth to 1965 with an approximate population of 118,500 persons, an increase of approximately 1.2% per annum [C.H.R. 259–260]. It was established that the southwest quadrant of the City of Fort Worth (including the two mile radius of Bluebonnet Circle) is growing very slow and is substantially a static area [C.H.R. 246–247]. The only areas showing growth were shown to be on the fringe of the southwest quadrant [C.H.R. 247]. This was reflected by several economic indices, such as residential development, school enrollments, telephone utility connections, and postal delivery stops, showing either declines or very modest increases [C.H.R. 257–276]. It was also shown that most of the housing additions in the area are fully developed or nearly so [C.H.R. 256–257], a substantial percentage of the homes are in a deteriorating condition, the area has an older population compared to Tarrant County and other major areas of the City of Fort Worth, it suffers from a lack of adequate streets, and the southwest quadrant of the city is above the county and city averages in renter occupied housing [C.H.R. 247, 277–278]. The overwhelming majority of mortgage loans originated and owned by applicant in the southwest quadrant of

Fort Worth have been on properties located south of Loop 217, outside the two mile radius of the proposed site [C.H.R. 298–299]. If applicant were to move from its existing agency office location to the proposed site, it would be moving away from, rather than closer to, the great majority of its existing loan customers in the southwest quadrant [C.H.R. 299–300]."

These findings further read:

"Furthermore, the Commissioner finds that the proposed branch office would result in undue harm to existing associations [C.H.R. 299–301], and this application seeks to establish a full service branch office facility in an area which is in a different county from the principal or home office of the applicant association, and the community in which such additional office is sought to be located is being adequately served by existing savings and loan office facilities [C.H.R. 279–289]. It was shown at the hearing that an association operating in more than one county or community is not necessarily responsive to the local conditions or the local economy existing in any one particular community [C.H.R. 300–305]. This results in a competitive advantage to the multi-community operation, and consequently such a situation would create undue harm to the existing local savings and loan associations [C.H.R. 246, 299–301]. It has certainly been the intent and policy of the law, regulations and supervisory authorities, that local associations which have been established and developed in service of the local needs should be kept in a sound healthy competitive situation. It would be detrimental to the economic and general business climate of Texas communities if sound and strong local financial institutions were not allowed to be so established and developed [C.H.R. 201–305]. Thus, however vocal may be the critics of Section 2.4(f) of the Rules and Regulations as creating an arbitrary or artificial limit, it has served a valid

purpose in restraining overzealous competition, yet it does not prohibit the crossing of county lines in order to provide savings and loan service to a community not being furnished adequate service. It was shown that of the four largest metropolitan areas in Texas (Bexar, Harris, Dallas, Tarrant), Tarrant County in recent years has experienced the slowest growth, with the other areas growing at a rate two to three times that of Tarrant County [C.H.R. 248–253]. That there are other significant and substantial differences in the economics of Dallas and Fort Worth was also graphically illustrated in the comparative figures on many other economic indices such as effective buying incomes, bank debits, retail trade, wholesale trade, employment and labor forces, and operation of financial institutions [C.H.R. 95–96, 142, 251–253]. It has also been established that the existing associations domiciled in the City of Fort Worth intensively and adequately serve the areas in question [C.H.R. 279–284]. The savings and loan services offered by the applicant association are also being offered to the public by the existing associations, and in many respects, the services offered by the local Fort Worth associations are offered more intensively to the public than comparable services in the City of Dallas, the State of Texas or in the United States [C.H.R. 284–289]. From the testimony adduced at the hearing, the Commissioner finds that the southwest quadrant of the City of Fort Worth (including the two mile radius centered on 3526 Bluebonnet Circle) and the City of Fort Worth, are at present, being adequately served by existing savings and loan associations [C.H.R. 245, 279–289]."

In view of this evidence, we conclude that the Commissioner's order denying Oak Cliff's application to establish a branch office in the City of Fort Worth should be sustained. Therefore, the order of the Commissioner denying the application of Oak Cliff Savings and Loan Association to open and operate an additional branch office in Fort Worth is upheld and the judgments of the Trial Court and the Court of Civil Appeals are reversed and judgment rendered that Oak Cliff Savings and Loan Association take nothing.