

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 27, 1991

Mr. Larry E. Kosta
Executive Director
Department of Licensing and Regulation
P. O. Box 12157
Austin, Texas 78711

Opinion No. DM-60

Re: Whether a talent agency that follows certain amendments to Screen Actors Guild franchise regulations would violate the Texas Talent Agency Act, article 5221a-9, V.T.C.S. (RQ-146)

Dear Mr. Kosta:

You have asked whether a Texas talent agency franchised by the Screen Actors Guild[1] would violate the Texas Talent Agency Act, article 5221a-9, V.T.C.S., by adhering to certain franchise regulations. At issue are recent amendments to the Screen Actors Guild Codified Agency Regulations, Rule 16(g). Rule 16(g) includes the basic contract between the Screen Actors Guild and the Association of Talent Agents and the National Association of Talent Representatives, and controls the contractual relationship between the Screen Actors Guild and all franchised talent agencies, including franchised talent agencies in Texas.[2] Your letter summarizes the effect of the amendments to Rule 16(g) as follows:

> In both the franchising agreement [Rule 16(g)] and the amendment, [the Screen Actors Guild] considers all talent represented by a franchised agent to be [Screen Actors Guild] members, regardless of actual membership and that the agents should be restricted in the representation of their non-union

---

[1]The Screen Actors Guild is a national union which represents performers in the motion picture and television industry.

[2]Talent agencies represent performers, placing them in performing employment for a fee. The Screen Actors Guild attempts to regulate talent agencies by franchising them. The Association of Talent Agents and the National Association of Talent Representatives are trade organizations which represent a large number of franchised talent agencies throughout the country.

> talent to only producers who sign contracts with [the Screen Actors Guild].
>
> Furthermore, the [Screen Actors Guild] franchised talent agency, if it represents non-union talent to producers who are also non-union, must forfeit all fees and commission[s] to the union.

In a brief submitted to this office, the Screen Actors Guild disagrees with this characterization of Rule 16(g) and the effect of amendments. Because we do not interpret contracts in the opinion process, we simply accept your characterization as correct. We express no view on the correct interpretation of the amendments to Rule 16(g).[3]

To answer your question whether the amendments to Rule 16(g), as you interpret them, would violate the Texas Talent Agency Act, we first consider both the legislative history of the statute and its general framework. The Texas Talent Agency Act (hereinafter "the act") was adopted in 1989.[4] According to the House Bill Analysis, prior to 1979 talent agencies were subject to rules regulating employment agencies under article 5221a-6, V.T.C.S. *See* House Comm. on Labor and Employment Relations, Bill Analysis, S.B. 759, 71st Leg. (1989). In 1979, that provision was rewritten, and talent and modeling agents were eliminated from its licensing and regulatory requirements. *Id.* As a result, talent agencies were unregulated, and as the bill analysis states, "many 'fly by night' operations ... infiltrated the industry and [were taking] advantage of the consumer." *Id.* Clearly, the purpose of the act was to remedy this situation by regulating the industry. *Id.*

---

[3]We also note that the briefs submitted by counsel for the Screen Actors Guild and various Texas talent agencies address at great length the legality of the amendments to Rule 16(g) under Texas' antitrust and right to work statutes. The purpose of the opinion process is to address questions affecting the public interest or concerning the official duties of governmental officials posed by specific, statutorily-authorized requestors, not to address questions posed by private parties. *See* Tex. Const. art. IV, § 22; Gov't Code § 402.042(a). Because your request seeks an opinion only with respect to the Texas Talent Agency Act, we must confine our analysis to that provision.

[4]S.B. 759, Acts 1989, 71st Leg., ch. 202, at 869.

Significantly, it is evident from the bill analysis that the act was enacted to protect consumers, *i.e.* the artists[5] who use talent agencies to obtain employment, rather than talent agencies themselves. That the primary purpose of the act is to protect artists is also evident from its substantive provisions. First and foremost, the act protects artists by requiring talent agents to register with the Department of Licensing and Regulation (hereinafter "the department")[6] and to post surety bonds with the department. *Id.*; *see also* V.T.C.S. art. 5221a-9, §§ 2, 5. The act also sets forth certain prohibited conduct, including operating a talent agency without a certificate of registration, charging artists registration or advance fees, and splitting a fee with a person who is not registered under the act. V.T.C.S. art. 5221a-9, § 2. In addition, the act provides certain specific protections for artists, including restricting the manner in which talent agencies handle funds on behalf of artists and requiring that talent agencies provide artists with complete, written contracts. *Id.* §§ 10(b), 12. The department is vested with rulemaking authority to implement the act. *Id.* § 3(a)(3).

The act contains several enforcement provisions. First, a contract that does not comply with the act is void and unenforceable. *Id.* § 13(a). Second, violations of the act are deceptive trade practices, and the act incorporates the remedies set forth in chapter 17 of the Business and Commerce Code. *Id.* § 13(b). Third, the department may institute an action for injunctive relief to enjoin violations of the act. *Id.* § 14. Finally, a person who knowingly or intentionally violates the act commits a Class A misdemeanor. *Id.* § 15; *see also* Penal Code § 12.21.

You have specifically asked whether the Screen Actors Guild amendments to Rule 16(g) would cause franchised talent agencies to violate sections 2(b), 2(c), or 10(b) of the act. We examine each of these provisions in turn. Section 2(b) of the act provides:

> A talent agency may not charge, as a condition of registering
> any applicant or representing any artist, a registration or

---

[5]We use the term "artist" as it is defined in the Texas Talent Agency Act to include actors, musicians, directors, writers, and other professionals in the entertainment industry. *See* V.T.C.S. art. 5221a-9, § 1(1); *see also* 16 T.A.C. § 78.10.

[6]Although the act refers to the Department of Labor and Standards, the name of the agency was changed to the Department of Licensing and Regulation in 1989. *See* Acts 1989, 71st Leg., ch. 1039, § 6.03, at 4231.

advance fee and may not require the applicant or artist to subscribe to, use, or use the services of any specific publication, video or audio tapes, post card service, advertisement service, resume service, photographer, or acting or modeling school or workshop.

The amendments to Rule 16(g) as you describe them would not directly implicate this provision. They would not require talent agents to charge a registration or advance fee, nor would they require talent agents to require artists to use any specific publication, video or audio tapes, post card service, advertisement service, resume service, photographer, or acting or modeling school or workshop.

Section 2(c) of the act provides:

A talent agency may not split or share fees with a person who is not registered under this Act.

As you understand the amendments to Rule 16(g), they would require the talent agencies to forfeit to the Screen Actors Guild commissions earned from nonunion artists who are employed by nonunion producers. You suggest that this would constitute fee splitting in violation of section 2(c). Given the broad language of this provision, we agree that forfeiting fees to a third person could constitute splitting or sharing fees under the act. Thus, on the face of the act, it would appear that section 2(c) would prohibit talent agents from forfeiting fees to the Screen Actors Guild since the Screen Actors Guild is not registered as a talent agency under the act.

We note, however, that the department's regulations interpreting the act appear to compel a different conclusion. The administrative regulations promulgated pursuant to the act interpret section 2(c) as follows: "A talent agency may not split or share fees with any person *who is required to be but is not registered under the Act as a talent agency*." 16 T.A.C. § 78.76(b) (emphasis added). The regulations also expressly state that the term "talent agency" does not apply to "a union that represents artists and whose efforts to obtain or attempt to obtain employment for its members is casual in nature only," and exempts such unions from the requirements and prohibitions of the act. *Id.* § 78.30(b) ("Exemptions"). In their brief, the Texas talent agencies concede that the Screen Actors Guild does not

obtain or attempt to obtain employment for its members.[7]  Assuming that this is actually the case, the Screen Actors Guild is not required to register as a talent agency.  Therefore, it would appear that the act, as interpreted by the department's regulations, would not prohibit talent agencies from splitting or sharing fees with the Screen Actors Guild.

We further note that there is an apparent inconsistency between the act and the department's regulations.  Section 2(c) of the act prohibits talent agencies from splitting or sharing fees with any person who is not registered under the act.  The act defines the term "person" broadly to mean "an individual, corporation, organization, business trust, estate, trust, partnership, association, or any other private legal entity."  V.T.C.S. art. 5221a-9, § 1(5).  As noted above, however, title 16, section 78.76(b), of the Texas Administrative Code merely prohibits a talent agency from splitting or sharing fees with "any person who is required to be but is not registered under the act as a talent agency."  Thus, while the act would prohibit talent agencies from splitting fees with any nonregistered person, the regulations apparently would permit talent agencies to split fees with persons who are not registered under the act but are not required to register.

Generally, regulations interpreting a legislative provision promulgated by an agency with the authority to implement the provision are presumed valid, *see* 2 TEX. JUR. 3d *Administrative Law* §§ 18, 85 (1979), and are regarded as having the force and effect of law, *id.* § 19.  An order which exceeds an agency's authority, however, is invalid. *Id.* § 16 at 209.  Given the apparent inconsistency between section 2(c) of the act and section 78.76(b) of title 16 of the Texas Administrative Code, we must consider whether the latter is a valid regulation or whether the department has exceeded its authority.

The critical factor in determining if an agency has exceeded its rulemaking authority is whether the regulation is in harmony with the general objectives of the

---

[7]In their briefs, the Texas talent agencies contend that this regulation does not exempt the Screen Actors Guild from the prohibitions of section 2(c) because the Screen Actors Guild does not attempt to obtain employment for its members in any respect.  They contend that the regulation exempts *only* unions which casually attempt to obtain work for their members.  We find this interpretation of the regulations unpersuasive.  Clearly, the regulations are intended to exclude *all* entities which do not obtain or do not attempt to obtain employment for artists from the requirements of the act.  This regulation merely clarifies that unions which casually attempt to obtain employment for their members are also exempt.  The regulation is clearly *not* intended to exclude unions which *never* engage in such activities from the exemption.

statute. *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968). Applying this factor, we conclude that the regulation regarding the section 2(c) fee splitting prohibition is not inconsistent with the general objectives of the act. As noted above, the primary purpose of the act is to protect artists by requiring talent agencies to register with the department. *See* House Comm. on Labor and Employment Relations, Bill Analysis, S.B. 759, 71st Leg. (1989). The purpose of section 2(c) appears to be to enforce the registration requirement by preventing persons who fail to register from continuing to earn fees. The regulation does not conflict with this purpose because it does not exempt persons who are required to register from the registration requirement. Although the regulation does limit the scope of the section 2(c) fee splitting provision to exclude persons who are not required to register, we believe that this is not problematic because the act is simply not intended to regulate the conduct of persons who do not obtain employment for artists. We believe that the department did not exceed its authority in enacting this regulation and that it is valid. On this basis, we conclude that section 2(c) would not prohibit talent agents from forfeiting fees to the Screen Actors Guild.

Finally, we consider whether the amendments to Rule 16(g) would violate section 10(b) of the act. Section 10(b) of the act provides:

> A registrant who receives any funds on behalf of an artist shall deposit those funds in an account maintained in a financial institution covered by federal deposit insurance. The funds may be disbursed only as prescribed by department rule.

The department regulations set forth the length of time within which talent agencies must disburse such funds to artists and the records they must maintain with respect to such funds. 16 T.A.C. § 78.72. Apparently, your concern is that forfeiture of fees by the talent agencies to the Screen Actors Guild would run afoul of this provision. We conclude, however, that this provision does not speak to how talent agencies handle monies after artists have been fully compensated. The purpose of this provision appears to be to protect artists from unscrupulous talent agencies by regulating how talent agencies disburse funds to which artists are entitled as payment for their work. It is clearly *not* intended to protect talent agencies. Certainly, this provision would preclude a talent agency from disbursing an artist's monies to a third person. It appears, however, to have no bearing on the disbursement of monies a talent agency retains as a commission after proper and complete disbursement of funds to an artist. Thus, we believe that section 10(b) would not prohibit a talent agency from forfeiting its own monies to the Screen

Actors Guild after it had properly disbursed to the artist all funds to which he or she is entitled.

## SUMMARY

Talent agencies would not violate sections 2(b), 2(c), or 10(b) of the Texas Talent Agency Act, article 5221a-9, V.T.C.S., by following certain amendments to Screen Actors Guild franchise regulations, as those amendments are interpreted by the Department of Licensing and Regulation.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General