

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 30, 1992

Mr. C. Thomas Camp
Executive Director
Texas State Board
  of Dental Examiners
327 Congress Avenue, Suite 500
Austin, Texas 78701-4037

Opinion No. DM-136

Re:  Whether rules recently enacted by the Texas State Board of Dental Examiners relating to HIV- and HBV-infected dental health care workers are inconsistent with subchapter I of chapter 85 of the Health and Safety Code  (RQ-266)

Dear Mr. Camp:

The State Board of Dental Examiners (hereinafter the "board") recently adopted regulations which establish infection control procedures for the practice of dentistry, including use of sterilization and disinfection techniques and compliance in the treatment of patients with procedures recommended for dentistry by the Centers for Disease Control of the United States Public Health Service. *See* Tex. State Bd. of Dental Examiners, 16 Tex. Reg. 6633-36 (1991), *adopted* 17 Tex. Reg. 1092-94 (1992) (to be codified at title 22, section 109.220 *et seq.*, of the Texas Administrative Code) (hereinafter "Board Rules"). Most of these provisions apply to all dental health care workers. *See, e.g., id.* §§ 109.222, 109.223(a), (b). You ask whether the board has the authority to enact several provisions which specifically pertain to dental health care workers who know that they are infected with the hepatitis B virus (hereinafter "HBV") or the human immunodeficiency virus (hereinafter "HIV"). *See id.* §§ 109.223(c) - (f), 109.224. We understand that you are particularly concerned about section 109.223, subsections (c) and (d), and section 109.224, subsection (a).

Section 109.223(c) requires an HIV- or HBV-infected dental health care worker to refrain from performing invasive procedures[1] until consulting with the expert review

---

[1]The regulations define the terms "health care worker" and "invasive-procedure" as those terms are defined in section 85.202 of the Health and Safety Code. Board Rules § 109.221. "Health care worker' means a person who furnishes health care services in direct patient care situations under a license, certificate or registration issued by this state or a person providing direct patient care in the course of a training or educational program." Health & Safety Code § 85.202(2). "Invasive-procedure' means: (A) a surgical

panel as to which procedures he or she may continue to perform.[2] Section 109.223(d) provides that the board will establish an expert review panel to review HBV- and HIV-infected dental health care workers' "infectious disease status," and to set conditions with which such workers must comply. The expert review panel would release information to the board secretary and executive director which would be used "only for the purposes of monitoring the worker's compliance with conditions set by the review panel." *Id.* § 109.223(d).[3]

Section 109.224(a) requires all dental health care workers to notify the expert review panel "within 24 hours, or the next working day, of confirmed testing of positive results for HIV or HBeAg seropositivity." It also provides that "[f]ailure by the health care worker to do so may result in disciplinary action, including license revocation or

---

(footnote continued)

entry into tissues, cavities, or organs; or (B) repair of major traumatic injuries associated" with certain specified procedures. *Id.* § 85.202(3).

[2]The complete text of section 109.223(c) is as follows:

> A dental health care worker(s) who knows he or she is infected with HIV or HBV and who knows he or she is HBeAg positive may not perform any invasive procedures unless and until the worker has reported his/her health status to an expert review panel, as provided for herein, and has sought and received counsel from [the] panel as to what procedures, if any, the worker may continue to perform, pursuant to provisions of [the Health and Safety Code], § 85.204, et seq., as amended, 1991.

[3]The complete text of section 109.223(d) is as follows:

> An expert review panel shall be named upon, or as soon thereafter as possible, the effective date of these rules and shall be comprised of experts designated by the board in the fields of infectious disease with emphasis in HIV and HBV epidemiology; dentistry with expertise in diagnosis and treatment of oral manifestations of HIV; [sic] and HBV infection; and public health. The expert review panel shall conduct its review(s) and make its determinations with confidentiality, except that such information shall be reported to the Texas State Board of Dental Examiners as provided herein. The release of information by the panel, relating to the workers' [sic] infectious disease status shall be to the board secretary and executive director, and any such information shall be utilized only for the purposes of monitoring the worker's compliance with conditions set by the review panel. In each instance of panel review of a health care worker's infectious disease status, the panel shall include, where possible, the health care worker's personal physician.

suspension, as may be determined by the board."[4]  You ask whether the board has the authority to enact these regulations under either V.T.C.S. article 4551d(c) or subchapter I of chapter 85 of the Health and Safety Code.

Article 4551d(c) was enacted by the 72d Legislature.  *See* H.B. 817, Acts 1991, 72d Leg., ch. 768, § 4, at 2738.  It provides as follows:

> The Board shall investigate the issue of infection control and may adopt and enforce rules not inconsistent with the laws of this state to control the spread of infection in the practice of dentistry as necessary to protect the public health and safety.

Subchapter I of chapter 85 of the Health and Safety Code was also enacted by the 72d Legislature as House Bill 7.  H.B. 7, Acts 1991, 72d Leg., 1st C.S., ch. 15, § 5.05, at 317.  Section 85.204 of subchapter I requires health care workers who are infected with HIV or HBV to refrain from performing "exposure-prone procedure[s]"[5] unless they have sought counsel from an expert review panel and have been advised regarding under what circumstances they may do so.[6]

---

[4]The complete text of section 109.224(a) is as follows:

> A dental health care worker shall notify the expert review panel directly through the Texas State Board of Dental Examiners (TSBDE) director within 24 hours, or the next working day, of confirmed testing of positive results for HIV or HBeAg seropositivity.  Failure by the health care worker to do so may result in disciplinary action, including license revocation or suspension, as may be determined by the board in accord with [article 4549, section 3, V.T.C.S].

[5]"'Exposure-prone procedure' means a specific invasive procedure that poses a direct and significant risk of transmission of HIV or hepatitis B virus, as designated by a health professional association or health facility, as provided by Section 85.204(b)(4) [of the Health and Safety Code]."  Health & Safety Code § 85.202(1).  At the time the legislature adopted House Bill 7, it was expected that the Centers for Disease Control of the United States Public Health Service would issue guidelines listing "exposure-prone procedures."  In December 1991, however, the Centers for Disease Control announced that it will not do so.  *News Briefs: Centers for Disease Control Impacts Texas Regulation*, TEXAS DENTAL JOURNAL, Jan. 1992, at 31.

[6]Section 85.204 provides in pertinent part:

> (a) Except as provided by Subsection (b) and (c), a health care worker who is infected with HIV or who is infected with hepatitis B virus and is HBeAg positive may not perform an exposure-prone procedure.

> (b) (1) A health care worker who is infected with HIV or who is infected with hepatitis B virus and is HBeAg positive may perform an exposure-prone

An administrative agency may promulgate rules when it has the express statutory authority to do so or when implied authority is necessary to accomplish the purpose of a statute. *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702 (Tex. 1968). Article 4551d(c) confers upon the board the authority to adopt and enforce rules to control the

---

(footnote continued)

procedure only if the health care worker has sought counsel from an expert review panel and been advised under what circumstances, if any, the health care worker may continue to perform the exposure-prone procedure.

(2) An expert review panel should include the health care worker's personal physician and experts with knowledge of infectious diseases, infection control, the epidemiology of HIV and hepatitis B virus, and procedures performed by the health care worker.

(3) All proceedings and communications of the expert review panel are confidential and release of information relating to a health care worker's HIV status shall comply with Chapter 81.

(4) Health professional associations and health facilities should develop guidelines for expert review panels and identify exposure-prone procedures, as defined by this subchapter.

. . . .

(f) A health care worker who is infected with HIV or who is infected with hepatitis B virus and is HBeAg positive who performs invasive procedures not identified as exposure-prone should not have his or her practice restricted, provided the infected health care worker adheres to the standards for infection control provided in Section 85.203.

Section 85.206 provides that subchapter I does not:

(1) require the revocation of the license, registration, or certification of a health care worker who is infected with HIV or hepatitis B virus;

(2) prohibit a health care worker who is infected with HIV or hepatitis B virus and who adheres to universal precautions, as defined by this subchapter, from:

(A) performing procedures not identified as exposure-prone; or
(B) providing health care services in emergency situations;

(3) prohibit a health care worker who is infected with HIV and who adheres to universal precautions from providing health care services, including exposure-prone procedures, to persons who are infected with HIV; or

(4) require the testing of health care workers.

spread of infection in the practice of dentistry. However, article 4551d(c) also expressly limits that authority by providing that the board's rules may not be "inconsistent with the laws of this state."[7] We believe that sections 109.223(c), (d) and 109.224(a) are inconsistent with subchapter I of chapter 85 of the Health and Safety Code in the following respects.

First, the rules prohibit HIV- and HBV-infected dental health care workers from performing *any* invasive procedures unless they have consulted with the expert review panel. *Id.* § 109.223(c). Subchapter I of the Health and Safety Code, on the other hand, in section 85.204(f), expressly provides that an HIV-infected and HBeAg-positive health care worker "who performs invasive procedures not identified as exposure-prone *should not have his or her practice restricted, provided the infected health care worker adheres to the standards for infection control* provided in Section 85.203." (Emphasis added.) Section 85.206(2) reiterates that the health care workers provided for in section 85.204(f) are not prohibited by the subchapter from performing procedures not identified as exposure-prone so long as they adhere to universal precautions as defined by the subchapter. *See also id.* § 85.202(4), set out in full in footnote 8 (defining the term "universal precautions"); *cf. id.* § 85.204(a) (prohibiting HIV-infected and HBeAg-positive health care workers from performing exposure-prone procedures).

In our opinion, section 109.223(c) of the board's rules is inconsistent with the applicable statutes in restricting the subject health care workers from performing *any* invasive procedures unless they have consulted with the expert review panel. We think it clear from the statutory language that the legislature has determined that HIV- and HBV-infected dental health care workers who have tested positive should nevertheless not be restricted in performing the non-exposure-prone treatments so long as they adhere to the "universal precautions" and other safeguards prescribed by the statutory provisions.[8]

---

[7]We note that article 4551d(a), V.T.C.S., similarly limits the board's rule-making authority.

[8]Section 85.203 mandates that all health care workers shall adhere to "universal precautions," requires training institutions to provide instruction therein, and requires health care institutions to establish procedures for monitoring compliance with those precautions. Subsection (b) of the section makes special provision for procedures to be followed by health care workers exhibiting certain symptoms. "Universal precautions" is defined in section 85.202 (4) to mean

> procedures for disinfection and sterilization of reusable medical devices and the appropriate use of infection control, including hand washing, the use of protective barriers, and the use and disposal of needles and other sharp

Second, the rules require *all* dental health care workers to notify the expert review panel "within 24 hours, or the next working day, of confirmed testing of positive results for HIV or HBeAg seropositivity." Board Rules § 109.224(a). Subchapter I, however, requires only those HBeAg-positive and HIV-infected health care workers who perform exposure-prone procedures to consult an expert review panel. Health & Safety Code § 85.204. Indeed, as noted above, subchapter I expressly permits HIV- and HBV-infected health care workers to continue to treat patients provided that they adhere to universal precautions and do not perform exposure-prone procedures. It does not require such health care workers to report to or consult with an expert review panel.

Third, the rules provide that the board will establish and designate an expert review panel. Board Rules § 109.223(d). Subchapter I of chapter 85 of the Health and Safety Code, however, does not authorize statewide licensing agencies to establish expert review panels. Indeed, section 85.204(b)(4) of the Health and Safety Code suggests that such expert review panels will be established by "[h]ealth professional associations and health facilities." In subchapter I, licensing entities are mentioned only in section 85.205, which provides that a health care worker who fails to comply with subchapter I is "subject to disciplinary procedures by the appropriate licensing entity." We believe that if the legislature had intended to give licensing agencies a greater role in reviewing the conduct of HIV- and HBV-infected health care workers, it would have explicitly provided for such a role.[9]

Finally, the rules authorize the expert review panel to release information to the board secretary and executive director "for the purposes of monitoring the worker's compliance with conditions set by the review panel." Board Rules § 109.223(d). Subchapter I of the Health and Safety Code specifically provides that "[a]ll proceedings and communications of the expert review panel are confidential and release of information relating to a health care worker's HIV status shall comply with Chapter 81."

---

(footnote continued)

instruments as those procedures are defined by the Centers for Disease Control of the United States Public Health Service.

[9] We further note that the house engrossment version of House Bill 7 provided that health care workers would consult with a "peer assistance program" established under chapter 467 of the Health and Safety Code or the Medical Practice Act, article 4495b, V.T.C.S. Under chapter 467 of the Health and Safety Code, licensing or disciplinary authorities are authorized to establish peer assistance programs. Thus, the house engrossment version of House Bill 7 would have allowed licensing authorities such as the board to assist HIV- and HBV-infected dental health care workers. "Peer assistance program" was changed to "expert review panel" in the conference committee.

Health & Safety Code § 85.204(b)(3). Section 81.103(a) of chapter 81 of the Health and Safety Code provides that acquired immune deficiency syndrome (AIDS) and HIV test results are confidential, and that a person who "has knowledge of a test result may not release or disclose the test result or allow the test result to become known" except under certain circumstances. The exceptions to this general confidentiality stricture do not include release of test results to statewide licensing agencies. *See* Health & Safety Code § 81.103(b).[10] A person tested may voluntarily release his or her test result and may authorize the release or disclosure of the test result. *Id.* § 81.103(d). The authorization must be in writing and signed by the person tested, and must state the person or class of persons to whom the test results may be released or disclosed. *Id.*

Section 81.101 defines "test result" broadly to include "any statement that indicates that an identifiable individual has or has not been tested for AIDS or HIV infection, antibodies to HIV, or infection with any other probable causative agent of AIDS, including a statement or assertion that the individual is positive, negative, at risk, or has or does not have a certain level of antigen or antibody." Clearly, in informing the board secretary and executive director about a dental health care worker's HIV status without the dental health care worker's written authorization, the expert panel would reveal confidential information in violation of section 81.103. *Cf.* Attorney General Opinion DM-61 (1991) (release of information on a death certificate that a person died as the result of AIDS or HIV infection would implicate section 81.103 of the Health and Safety Code). Thus, we conclude that the release of information by the expert review panel to the board secretary or executive director relating to a dental health care worker's infectious HIV status would run afoul of chapter 81 of the Health and Safety Code, and is thus inconsistent with both that provision and section 85.204(b)(3) of the Health and Safety Code.

For the foregoing reasons, we conclude that the board's rules relating to HIV- and HBV-infected dental health care workers are inconsistent with subchapter I of chapter 85 of the Health and Safety Code and therefore exceed the board's authority under article 4551d(c), V.T.C.S.

---

[10]Section 81.103(b) authorizes the release of a test result to the Department of Health or a local health authority pursuant to chapter 81 if reporting is required; the Centers for Disease Control of the United States Public Health Service if reporting is required by federal law; the physician or other legally authorized person who ordered the test; a physician, nurse or other health care personnel who have a legitimate need to know the test result in order to provide for their protection and to provide for the patient's health and welfare; the person tested; the spouse of the person tested; a person authorized to receive test results under article 21.31 of the Code of Criminal Procedure; a person exposed to HIV infection; and law enforcement and certain other emergency services personnel in specified circumstances.

## S U M M A R Y

Rules recently enacted by the Texas State Board of Dental Examiners, 17 Tex. Reg. 1093-94 (1992) (to be codified at title 22, sections 190.223, 190.224 of the Texas Administrative Code), relating to HIV- and HBV-infected dental health care workers, are inconsistent with subchapter I of chapter 85 of the Health and Safety Code and therefore exceed the board's authority under article 4551d(c), V.T.C.S., to adopt and enforce rules to control the spread of infection. The board may promulgate rules to control the spread of disease in the practice of dentistry, but such rules cannot conflict with the statutory scheme currently in place to control the spread of infection.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General