SOT v. Exiga







NUMBER 13-00-00332-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

______________________________________________________________


THE STATE OF TEXAS, Appellant,


v.


LUIS EXIGA, Appellee.

______________________________________________________________


On appeal from the 156th District Court of Live Oak County, Texas.

______________________________________________________________


O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Hinojosa


The State appeals from the trial court's order granting a motion to suppress filed by appellee, Luis Exiga. See Tex. Code
Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2001). We affirm.

A. Standard of Review


When we review a trial court's ruling on a motion to suppress, we are required to give almost total deference to the trial
court's factual determinations which are supported by the record, especially when they are based on an evaluation of
credibility and demeanor. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000); Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). With mixed questions of law and fact which turn on an evaluation of credibility
and demeanor, we should also defer to the trial court's ruling. Guzman, 955 S.W.2d at 89. However, we review de novo
the court's application of the law to the facts. Id. Because the trial court did not make explicit findings of fact, we review
the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the
record and buttress its conclusions. Carmouche, 10 S.W.3d at 327-28. 

B. Background


Appellee was indicted for the offense of possession of more than five pounds but less than fifty pounds of marihuana. See
Tex. Health & Safety Code Ann. § 481.121(a) (Vernon Supp. 2001). Texas Department of Public Safety ("DPS") Trooper
Christopher McGuairt testified at the hearing on appellee's motion to suppress that he spotted an "older model Dodge Ram
Charger" with "extremely dark" reflective "mirror-type" window tint, which he knew to be "illegal." McGuairt stopped the
vehicle because of its window tint, obtained consent to search the vehicle, and discovered some thirty-eight pounds of
marihuana. (1) The trooper did not use his window tint meter to measure the opacity of the tint because he "knew already
that a violation had been committed," and because the device does not measure reflective window tint. The truck was a
1985 Dodge Ram Charger with Texas license plates. 

Appellee argued that because the statute criminalizing the utilization of certain types of vehicle window tint specifically
does not apply to 1985 vehicles, the traffic stop was invalid, and the marihuana should be suppressed. The State argued
that (1) administrative rules promulgated by DPS establishing vehicle window tint standards specifically apply to pre-1988
vehicles, (2) appellee's vehicle was in violation of those rules, and (3) the traffic stop was valid. The trial court granted
appellee's motion to suppress, and this appeal ensued.

In a single issue, the State contends the DPS has "the authority . . . to make rules and regulations to expand the
Transportation Code Section 547.613 to prohibit tint on all vehicles in Texas regardless of the age of the vehicle."

C. Applicable Law


1. Traffic Stops


If an officer has reason to suspect that "criminal activity may be afoot," something less than probable cause is needed for an
investigatory stop. Terry v. Ohio, 392 U.S. 1, 30 (1968); McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993)
(officer may lawfully stop and detain a person for a traffic violation); see Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim.
App. 1992) (as long as actual violation occurs, police are free to enforce law and detain person for that violation, regardless
of officers' subjective reasons);Howard v. State, 888 S.W.2d 166, 172 (Tex. App.-Waco 1994, pet. ref'd) (stop is lawful if
officer has reasonable suspicion of traffic violation either on the automobile or by one of the automobile's occupants).

Reasonable suspicion is defined as "something less than probable cause." Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim.
App. 1997). Reasonable suspicion requires that "there is something out of the ordinary occurring and some indication that
the unusual activity is related to crime." Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992). The articulated facts
that support a temporary detention must be taken as a whole, and the reasonable suspicion formed must be based on the
totality of the circumstances. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). If an officer develops a
reasonable suspicion that a motorist is engaged in, or soon will engage in criminal activity, he may continue to detain him
for investigation unrelated to the initial traffic stop. Davis, 947 S.W.2d at 245. It is well settled that a traffic violation
committed in an officer's presence authorizes an initial stop. Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim. App.
1982); see United States v. Castillo, 76 F.3d 1114, 1117 (10th Cir. 1996) (officer stopped driver for window tint violation
and subsequent consent search revealed illegal drugs).

2. Vehicle Window Tint


It is a misdemeanor to attach to the windows of a motor vehicle "a transparent material that alters the color or reduces the
light transmission," except as specifically allowed by statute. Tex. Transp. Code Ann. § 547.613(a), (b) (Vernon 1999). 
However, these provisions do not apply to a motor vehicle with a manufacturer's model year before 1988. Tex. Transp.
Code Ann. § 547.612(b)(13) (Vernon 1999). Clearly, the Legislature intended to criminalize only the application of certain
window tints to vehicles of a manufacturer's model year of 1988 and later.

The Legislature gave DPS the authority to "adopt rules necessary to administer . . . chapter [547]." Tex. Transp. Code Ann.
§ 547.101(a) (Vernon 1999). It also authorized DPS to "adopt standards for vehicle equipment to: (1) protect the public
from unreasonable risk of death or injury; and (2) enforce safety standards of the United States as permitted under the
federal motor vehicle act." Tex. Transp. Code Ann. § 547.101(b) (Vernon 1999). However, the Legislature has specifically
forbidden DPS from adopting "a vehicle equipment standard inconsistent with a standard provided by this chapter." Tex.
Transp. Code Ann. § 547.101(d) (Vernon 1999).

DPS has enacted regulations concerning vehicle window tint "applicable to motor vehicles if the manufacturer's model year
is before 1988." 21 Tex. Admin. Code § 21.1(b)(7)(2001) (Dept. of Public Safety Equipment & Vehicle Standards). 
"Manufacturer's model year of a motor vehicle 1988 and later shall comply with the provisions of [chapter 547 of the
transportation code]." Id. at § 21.1(b)(9).

The question raised here is whether DPS had the authority to issue regulations forbidding certain window tints on pre-1988
vehicles when the enabling legislation clearly exempts those vehicles from having to comply with the statute.

D. Analysis


The Texas Legislature may delegate its power to administrative agencies established to carry out legislative purposes. 
Edgewood Indep. Sch. Dist. v. Meno, 917 S.W.2d 717, 740 (Tex. 1995). Generally, an administrative agency is a creation
of the legislature and, as such, has only those powers expressly conferred and those necessary to accomplish its duties. 
State v. Pub. Util. Comm'n of Tex., 883 S.W.2d 190, 194 (Tex. 1994); State v. Jackson, 376 S.W.2d 341, 344 (Tex. 1964). 
An agency can adopt only such rules as are authorized by and consistent with its statutory authority. Railroad Comm'n of
Tex. v. Lone Star Gas Co., 844 S.W.2d 679, 685 (Tex. 1992). An agency's authority to promulgate rules and regulations
"may be expressly conferred on it by statute or implied from other powers and duties given or imposed by statute." Id. The
only requirement is that an agency's rules must be consistent with the laws of this state. Id.; Gerst v. Oak Cliff Sav. & Loan
Ass'n, 432 S.W.2d 702, 706 (Tex. 1968). The rulemaking power of administrative agencies does not permit the enactment
of regulations which are inconsistent with the expression of the lawmakers' intent in statutes other than those under which
the regulations are issued. Jackson, 376 S.W.2d at 345. The determining factor in whether a particular administrative
agency has exceeded its rule-making powers is that the rule's provisions must be in harmony with the general objectives of
the legislation involved. Lone Star Gas, 844 S.W.2d at 685; Gerst, 432 S.W.2d at 706.

Furthermore, we must strictly construe an agency's rule-making authority when we review a regulation that is penal in
nature. Land v. State, 581 S.W.2d 672, 674 (Tex. Crim. App. 1979). Strict construction forces us to look at the clear
language of the guidelines established by the legislature permitting the regulation. Id. Therefore, we must determine the
scope of the authority of the DPS, both express and implied, to enact rule 21.1(b). See Public Util. Comm'n, 883 S.W.2d at
194.

The precursor to chapter 547 was enacted in 1987; it became effective September 1, 1987. See Act of May 21, 1987, 70th
Leg., R.S., ch. 235, 1987 Tex. Gen. Laws 1538 (amended 1995) (current version at Tex. Transp. Code Ann. §
547.613(Vernon 1999)). (2) The statute exempted pre-1988 vehicles from compliance. Id. Therefore, from the very
inception of this statute, the legislature never intended its provisions to apply to pre-1988 vehicles.

Chapter 547 specifically allows DPS (1) to promulgate rules necessary to administer chapter 547 and (2) to adopt standards
for vehicle safety equipment in the interest of public safety. However, the statute specifically forbids DPS from adopting a
vehicle equipment standard inconsistent with chapter 547, and it specifically exempts pre-1988 vehicles from compliance
with the window tint standards mandated therein.

E. Conclusion


We hold that DPS administrative rule 21.1(b) is inconsistent with the legislative mandate set forth in chapter 547, and that
DPS exceeded its rule-making authority with respect to vehicle window tint standards for pre-1988 vehicles. Accordingly, 
we agree with appellee that a valid traffic stop could not have been predicated on "illegal" window tint present on a 1985
vehicle. For these reasons, we overrule the State's sole issue.

We affirm the trial court's order granting appellee's motion to suppress.



 

FEDERICO G. HINOJOSA

Justice



Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

10th day of January, 2002.

1. Appellee specifically reserved the right to contest the voluntariness of the search at a later time, if necessary.

2. The original statute, formerly Tex. Rev. Civ. Stat. Ann. art. 6701d § 134C, was codified into the transportation code in
1995.