### LOFTUS v. BECKMANN et al.
(No. 1039–4952.)

Commission of Appeals of Texas, Section A. Jan. 4, 1928.

**I. Dismissal and nonsuit ⊜⟶60(6)—Action against decedent's estate on note held improperly dismissed for want of prosecution for over 5 years, in view of attorneys' understanding, where defendants were not injured by delay.**

Action against executors of deceased person's estate on note *held* improperly dismissed for want of prosecution for period of more than 5 years, where testimony of attorneys representing parties showed that there was general understanding to effect that case should remain on docket subject to future contingencies, and there was no showing that defendants were injured by delay.

**2. Dismissal and nonsuit ⊜⟶60(1)—Case should not be dismissed because of abandonment unless abandonment clearly appears.**

A case should not be dismissed on ground of abandonment unless abandonment clearly appears.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by William Loftus against Enrique M. Beckmann and others. Judgment of dismissal was affirmed by the Court of Civil Appeals (296 S. W. 703), and plaintiff brings error. Reversed and rendered.

Del W. Harrington and Sydney Smith, both of El Paso, for plaintiff in error.
Goldstein & Smith, of El Paso, for defendants in error.

CRITZ, J. This suit was originally filed in the Thirty-Fourth district court of El Paso county, Tex., in March, 1916, by William Loftus, a resident of California, against Sotera Lopez de Beckmann and Enrique M. Beckmann, as executors of the estate of William C. Beckmann, deceased. After various proceedings were had in the district court, and after new parties defendant had been made, that court, on December 4, 1926, entered an order dismissing the case on the

---

ground of abandonment, and on the same day overruled a motion to reinstate. From the order overruling the motion to reinstate Loftus appealed to the Court of Civil Appeals at El Paso, which court affirmed the judgment of the district court. 296 S. W. 703. The issues of the case are fairly stated in the opinion of the Court of Civil Appeals and will not be repeated here.

On the hearing had in the district court on the motion to dismiss, Hon. Del W. Harrington, who was attorney for Loftus, made the following statement:

"At the time this matter came up, as it did, there appeared to be no property of the estate here out of which any debt could be made, and the matter was left open between John Dyer and myself. He had asked for a jury; the client was out of the country a good deal and it just dragged along, to be frank with the court, as those things sometimes do. There was no disposition on the part of Mr. Dyer to have the case dismissed, and he never made any request of that sort, and I didn't prosecute it, perhaps—I don't know whether I hadn't received a fee or how it was—but anyhow, the matter just stood that way, and up to this time I had no notice of any property belonging to the estate here that could be subject to the debt.

"It may be that the court would think that that was a dereliction on the part of counsel, but the court understands what the situation is here, people are in and out, in Mexico and here, and now I want to say this: The parties are all before the court, it is a matter, I think, in the discretion of the court, and if this case should be dismissed the court can see readily that the plaintiff would have no opportunity to recover at any time, perhaps, or any place. If there is a good defense to this suit nobody can be hurt by having the facts heard; if there is not a good defense to it, why justice would not be defeated if the case was tried. It seems to me nobody will be harmed by a trial at this time, while there might be injustice or inequity done by dismissing it.

"I don't think there is any other reason than those I have stated why this case was not tried. When the matter came up, after the case was set aside, I took the matter up with Mr. Thomas, in Los Angeles, and told him there didn't seem to be any property here and asked if he would like to take direct proceedings over in Mexico. Mr. Thomas was representing Mr. Loftus there. I gave him a history of the matter; told him we had been unable to get service on those people, although we had had two citations issued, both returned because they couldn't be found in the county. One citation is dated June 21, 1916, and one is dated March 29, 1916.

"I told Mr. Thomas about having the order to remove the executor, that order having been vacated, and about the court having set aside the judgment which we had taken while the El Paso Bank & Trust Company was administrator. I don't remember the date of that, but it was some time after this order asking leave to amend. I wrote him about wanting to take some depositions to prove the identity of W. C. Beckmann and G. C. Beckmann—I think that is about all of it. I didn't get instructions to take the matter up direct in Old Mexico and I

didn't have instructions to dismiss or discontinue the suit and the matter has stood in that shape.

"I don't know what Mr. Thomas's relationship has been since then at all or anything about it. Mr. Thomas was the attorney that was associated with me in the case. I don't know that he referred the matter to me for local representation. He sent the matter to Judge Goggin, whom he said had been recommended to him, to handle the case, and I was with Judge Goggin at the time, and I handled it.

"I don't know if I would have proceeded with the trial of the case at that time if Mr. Thomas or Mr. Loftus had instructed me to do so. I had several talks with John Dyer about it, about trying to get it to trial, and his client would be out of town, as I stated to the court.

"Mr. Dyer left town about 18 months or 2 years ago. As to whether I regarded it as a case where a judgment couldn't be collected and for that reason I didn't prosecute it—I had a letter from Mr. Dyer that he hadn't gotten his fee out of it and I don't know; you know how those things are, Smith. As I said a while ago, I expect I ought to be censured for not getting the case to trial, but I don't like for my client to suffer.

"I never knew of any property of the estate that could be levied upon that I could find, and I didn't know of any until recently."

Hon. John Dyer, who was the attorney for the defendants in the district court, testified as follows:

"My recollection in reference to this matter is rather indistinct and indefinite. I recall that Mr. E. Moye, of El Paso, introduced me to Mrs. Beckmann, and I think with her at the time was her son, Enrique M. Beckmann, and another son. I either filed for probate the will of Wm. C. Beckmann, deceased, or applied for letters of administration on his estate. This was a number of years ago, and, as I recall, Mr. Del W. Harrington brought a suit in favor of William Loftus against Enrique M. Beckmann, executor, and others, which was pending in Judge Howe's court, and I have an indistinct recollection about an effort upon his part to remove the executor or administrator. As I now recall, some character of judgment was vacated. Before I could intelligently answer, I would have to have the court papers and my private files in this matter, which files are now in the office of Mr. R. A. D. Morton, my former partner in El Paso. I wish that I could more intelligently answer the question, but I cannot. I know that a number of years since, there was a discussion between Mr. Del W. Harrington and me about mutually agreeing upon a date for the trial of the case.

"My best recollection is that the trial of the case was delayed because there were no assets of the estate in the United States, and that the estate was badly involved in Mexico, and it was not known whether it would realize anything or not. I recollect that that is the reason Mr. Harrington and I agreed that the trial of the case should be deferred or delayed. It seems to me that Mr. Harrington brought two suits against the estate or, at least, I think there were two suits brought, it may be that another attorney brought one of the suits. I was taken ill in May, 1918, and did not return to my office

until January, 1919. I don't think Mr. Harrington and myself discussed this matter for quite a while prior to my illness in 1918, and I am positive that the matter has never been discussed by me with him since January, 1919. I think that something was said between us about the absence of the administrator or executor in Mexico, and that when the cases were set for trial, I would be given ample notice in order that I might communicate with the Beckmanns, who were in Mexico. There was an understanding between Mr. Harrington and myself that the case would be passed for trial until such time as it was convenient to try same. I had previously requested the Beckmanns to pay me a fee in these two cases, if there were two cases, and was hoping that a part of the estate in Mexico could be worked out, and that I would receive my fee. I explained this to Mr. Harrington, stating that apparently the estate was insolvent, as far as I could learn, or badly involved in Mexico, and it would be rather futile upon the part of either of us to try the cases, unless we felt that there would be assets wherewith to pay any judgment that might be rendered. I am positive that I have not requested any trial, or any delay, or any action whatsoever in reference to this case since my return to my office, in January, 1919, after my illness.

"I removed to Los Angeles, Cal., during April, 1925.

"I do not recall ever requesting Mr. Harrington to postpone the trial or setting of this case, during the period of 5 years before I removed to Los Angeles. I do not recall that Mr. Harrington and myself ever discussed the matter after January, 1919. I think all my conversation with Mr. Harrington, relative to this case, was prior to January, 1919. I recovered from my illness in January, 1919.

"I don't think I ever saw Mr. Harrington after January, 1919. I did not see him for some time prior thereto. I just gave the matter no further attention. I felt like the estate was insolvent. I recall asking Mr. Enrique M. Beckmann to pay a fee, and he stated the estate was not able to do so, and I just let the matter drag along in that way.

"I think I did request of Mr. Harrington that, if he set this case for trial, he give me ample notice, so that I could communicate with the Beckmanns in Mexico. My recollection is that we both just let the matter drag along. It may be that I asked Mr. Harrington to postpone the trial of the cases on account of the absence of the defendants from the United States. This was my understanding of the matter. In other words, that the cases would not be set for trial until it was mutually convenient.

"The reason I did not file an amendment was because the case had not been set down for trial. I asked leave to amend and demanded a

jury, so that if the case was set for trial I could pay a jury fee and file an amendment. I just felt that the cases had died a natural death. As to where the Beckmanns were I cannot positively answer, although I understood they were at Parral, Mexico. I cannot recall and do not know of their being in San Diego or Los Angeles. I did understand that they occasionally came to El Paso. I felt that Mr. E. Moye was a friend of theirs and would always be in touch with them, and if the cases were set for trial I could communicate with them through him."

The testimony of the above two attorneys constitutes all of the material evidence with reference to negotiations or agreements between the parties prior to the dismissal.

[1] It is shown that in July, 1923, Hon. W. D. Howe, judge of the district court, notified attorneys to report to him and show cause why all old cases on the docket should not be dismissed, it being his practice not to dismiss such cases when requested to leave the same on the docket, if good cause were shown why they should not be dismissed. At that time this case was not dismissed. We are of the opinion, from the above facts, and the facts found by the Court of Civil Appeals, that the trial court was in error in dismissing this cause. There is no showing and no attempt to show that the defendants have been injured by the delay, and the testimony of the two attorneys above quoted shows that there was a general understanding to the effect that this case should remain on the docket subject to future contingencies.

[2] Under this state of the record, we do not believe that the rule announced in the case of Flanagan v. Smith, 21 Tex. 493, applies to the facts in this case. A case should not be dismissed on the ground of abandonment unless such abandonment clearly appears.

We therefore recommend that the judgment of the Court of Civil Appeals and of the district court be reversed and judgment here rendered for the plaintiff in error, reinstating said cause in the district court.

CURETON, C. J. Judgments of the District Court and Court of Civil Appeals reversed, and judgment rendered reinstating cause, as recommended by the Commission of Appeals.