

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

July 7, 2004

The Honorable Frank J. Corte Jr.
Chair, House Committee on Defense Affairs
    and State-Federal Relations
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0212

Re: Whether abortion facilities that are exempt from licensing under section 245.004 of the Health and Safety Code are subject to regulation by the Texas Department of Health under chapter 245 (RQ-0158-GA)

Dear Representative Corte:

You ask several questions about the Texas Department of Health's authority under Health and Safety Code chapter 245, the Texas Abortion Facility Reporting and Licensing Act, to regulate abortion facilities that are exempt from licensing by section 245.004.[1] *See* TEX. HEALTH & SAFETY CODE ANN. ch. 245 (Vernon 2001 & Supp. 2004), § 245.001 (Vernon 2001) (short title).

## I.   Background

### A.   Legal Framework

#### i.   *Health and Safety Code Chapter 245*

The legislature first enacted the Texas Abortion Facility Reporting and Licensing Act in 1985 and repealed and codified it in the Health and Safety Code in 1989.[2] Chapter 245 provides for the licensing and regulation of abortion facilities by the Texas Department of Health (the "Department" or "TDH"). *See id.* § 245.002(4) (Vernon 2001) ("In this chapter . . . 'Department' means the Texas Department of Health."). Under chapter 245, the term "abortion facility" means "a place where abortions are performed." *Id.* § 245.002(2). Section 245.003(a) establishes the general licensing requirement: "Except as provided by Section 245.004, a person may not establish or operate an abortion facility in this state without an appropriate license issued

---

[1]*See* Letter from Honorable Frank J. Corte Jr., Chair, House Committee on Defense Affairs and State-Federal Relations, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General (Jan. 5, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* Act of May 27, 1985, 69th Leg., R.S., ch. 931, art. 20, 1985 Tex. Gen. Laws 3121, 3173 (enacting former article 4512.8 of the Revised Civil Statutes); Act of May 18, 1989, 71st Leg., R.S., ch. 678, §§ 1 (enacting Health and Safety Code chapter 245), 13 (repealing article 4512.8), 1989 Tex. Gen. Laws 2230, 2485, 3165.

under this chapter." *Id.* § 245.003(a). Section 245.004 provides that three types of facilities that are licensed under other law "need not be licensed under this chapter." *Id.* § 245.004(a) (Vernon Supp. 2004). Specifically, the licensing exemption extends to "a hospital licensed under Chapter 241 (Texas Hospital Licensing Law)," *id.* § 245.004(a)(1); "the office of a physician licensed under [the Medical Practice Act,] Subtitle B, Title 3, Occupations Code," *id.* § 245.004(a)(2),[3] unless the office meets certain criteria;[4] and "an ambulatory surgical center licensed under Chapter 243," *id.* § 245.004(a)(3), as amended by Act of May 23, 2003, 78th Leg., R.S., ch. 999, § 2, 2003 Tex. Gen. Laws 2930, 2933.

Establishing or operating an abortion facility without an appropriate license is a criminal offense. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 245.003(a) (Vernon 2001), 245.014(a) ("A person commits an offense if the person violates Section 245.003(a)."), 245.014(b) (establishing offense as a Class A misdemeanor), 245.014(c) ("Each day of a continuing violation constitutes a separate offense."); *see also id.* § 245.013(b)(2) ("A district court, on petition of the department and on a finding by the court that a person is violating the standards or licensing requirements provided under this chapter, may by injunction . . . restrain or prevent the establishment or operation of an abortion facility without a license issued under this chapter . . . .").

Section 245.009 requires the Texas Board of Health to "adopt rules necessary to implement this chapter, including requirements" related to licenses. *Id.* § 245.009. Section 245.010 further mandates that the rules "must contain minimum standards to protect the health and safety of a patient of an abortion facility and must contain provisions requiring compliance with the requirements of Subchapter B, Chapter 171." *Id.* § 245.010(a) (Vernon Supp. 2004);[5] *see also id.* ch. 171, subch. B,

---

[3]*See* TEX. OCC. CODE ANN. § 151.001 (Vernon 2004) ("This subtitle may be cited as the Medical Practice Act.").

[4]In 2003, the legislature enacted two irreconcilable amendments to the exemption for physician offices. Under section 245.004(a)(2), as amended by Act of May 23, 2003, 78th Leg., R.S., ch. 999, § 2, 2003 Tex. Gen. Laws 2930, 2933, the exemption applies to a licensed physician's office "unless the office is used substantially for the purpose of performing abortions." Section 245.004(b), as amended by Act of May 23, 2003, 78th Leg., R.S., ch. 999, § 2, defines the phrase "used substantially for the purpose of performing abortions." Under Health and Safety Code section 245.004(a)(2), as amended by Act of June 1, 2003, 78th Leg., R.S., ch. 198, § 2.63(a), 2003 Tex. Gen. Laws 611, 671, the exemption applies to a licensed physician's office "unless the office is used for the purpose of performing more than 50 abortions in any 12-month period." The second amendment, which the legislature enacted on June 1, 2003, prevails over the first, which the legislature enacted on May 23, 2003. *See* TEX. GOV'T CODE ANN. § 311.025(a) (Vernon 1998) (if statutes enacted in the same legislative session are irreconcilable, the statute latest in date of enactment prevails), (d) ("[T]he date of enactment is the date on which the last legislative vote is taken on the bill enacting the statute."); *see also* H.J. OF TEX., 78th Leg., R.S. (2003) (enactment of House Bill 15 on May 23, 2003), H.J. OF TEX., 78th Leg., R.S. 6351 (2003) (enactment of House Bill 2292 on June 1, 2003). The new TDH rules are consistent with this conclusion. *See* 25 TEX. ADMIN. CODE § 139.1(b)(1)(B) (2004), WL 25 TAC s 139.1(b)(1)(B) ("The following need not be licensed under this chapter: (i) a hospital licensed under HSC, Chapter 241; (ii) an ambulatory surgical center licensed under HSC, Chapter 243; or (iii) the office of a physician licensed under Subtitle B, Title 3, Occupations Code, *unless the office is used for the purpose of performing more than 50 abortions in any 12 month period.*") (emphasis added).

[5]Section 245.010(c) provides that the standards may not be more stringent than Medicare certification standards, if any, for: "(1) qualifications for professional and nonprofessional personnel; (2) supervision of professional and

(continued...)

§§ 171.011-.018 (Woman's Right to Know Act provisions requiring person who performs an abortion to obtain informed consent). Other chapter 245 provisions authorize the Department to issue abortion-facility licenses and to inspect abortion facilities. *See id.* §§ 245.005 (Vernon 2001) (license application and issuance), 245.006 (inspections). The Department "may deny, suspend, or revoke a license for a violation of this chapter or a rule adopted under this chapter." *Id.* § 245.012(a) (Vernon Supp. 2004). In addition, a person who violates chapter 245 or a rule adopted under chapter 245 may be liable for civil and administrative penalties. *See id.* §§ 245.015, .017-.020 (Vernon 2001).

   *ii.*  *25 Texas Administrative Code Chapter 139*

   As background to your questions, you note that in November 2003 the Department proposed changes to the rules it had previously adopted under chapter 245. *See* Request Letter, *supra* note 1, at 1; *see also* 28 Tex. Reg. 10051-10076 (2003) (to be codified at 25 Tex. Admin. Code ch. 139) (proposed Nov. 14, 2003) (Tex. Dep't of Health). Those changes became effective on February 5, 2004. *See* 29 Tex. Reg. 981-991 (2004) (to be codified as amendments to 25 Tex. Admin. Code ch. 139) (Tex. Dep't of Health) (Abortion Facility Reporting and Licensing Rules); 25 Tex. Admin. Code ch. 139 (2004), WL 25 TAC ch. 139. The amended rules generally use the term "facility" to refer to a licensed abortion facility, thus excluding facilities that are exempt from licensing. *See* 25 Tex. Admin. Code ch. 139 (2004), WL 25 TAC ss 139.2(22) (defining "facility" to mean "[a] licensed abortion facility"), 139.2(28) (defining "licensed abortion facility" to mean "[a] place licensed by the Department under Health and Safety Code, Chapter 245, where abortions are performed"). In particular, you note that in amending rules the Department added the word "licensed" before the words "abortion facility." Request Letter, *supra* note 1, at 1. You are specifically concerned about the effect of this change "in Subchapter D [of the rules], which establishes minimum standards for abortion facilities as required by Sections 245.009 and 245.010, Health and Safety Code, and in Section 139.31 [of the rules], which provides for the inspection of facilities and for the investigation of complaints by the department as authorized by Section 245.006, Health and Safety Code." *Id.*; *see also* 29 Tex. Reg. 987, 991 (2004) (to be codified as amendments to 25 Tex. Admin. Code §§ 139.31, 139.41-.60) (Tex. Dep't of Health) (Abortion Facility Reporting and Licensing Rules); 25 Tex. Admin. Code §§ 139.31, 139.41-.60 (2004), WL 25 TAC s 139.31 (providing for on-site inspections and investigations of a *licensed* abortion facility), WL 25 TAC ss 139.41-.60 (entitled "Subchapter D. Minimum Standards for *Licensed* Abortion Facilities") (emphasis added).

---

  [5](...continued)
nonprofessional personnel; (3) medical treatment and medical services provided by an abortion facility and the coordination of treatment and services, including quality assurance; (4) sanitary and hygienic conditions within an abortion facility; (5) the equipment essential to the health and welfare of the patients; (6) clinical records kept by an abortion facility; and (7) management, ownership, and control of the facility." Tex. Health & Safety Code Ann. § 245.010(c) (Vernon Supp. 2004); *see also id.* § 245.010(d) ("This section does not authorize the board to: (1) establish the qualifications of a licensed practitioner; or (2) permit a person to provide health care services who is not authorized to provide those services under other laws of this state.").

As further background, the Department observes that since 1987, when it first adopted rules under the Act,[6] it "has interpreted the Act and its codification in Chapter 245 as applying the license requirement and the related regulations only to those abortion facilities that are not expressly exempted from the Act's licensure provisions," particularly because exempt facilities are regulated under other law.[7] Since that time, the legislature has acted on several occasions to amend section 245.004(a) to narrow the exemption's scope. *See* Act of May 29, 1999, 76th Leg., R.S., ch. 1411, § 22.01, 1999 Tex. Gen. Laws 4761, 4820; Acts of May 23 and June 1, 2003, *supra* note 4 (narrowing scope of exemption for physician offices); *see also Women's Med. Ctr. of N.W. Houston v. Bell*, 248 F.3d 411, 414, 421 (5th Cir. 2001) (noting that 1999 amendments to section 245.004(a) narrowing the scope of the physician offices exemption regulated plaintiff physicians under chapter 245 for the first time). In adopting the final rule changes in the Texas Register, the Department explained that it added the phrase "licensed abortion facility" throughout the rules to distinguish between licensed and exempted facilities and to make clear its longstanding interpretation that "[t]he department's authority under [chapter 245] applies only to nonexempt facilities." 29 Tex. Reg. 979 (2004) (Tex. Dep't of Health).

The Department has, however, always required exempt facilities to submit annual reports on each abortion they perform under Health and Safety Code section 245.011 pursuant to a 1986 attorney general opinion that concluded that the reporting requirements apply to any place where an abortion is performed. *See* TDH Brief of 2/5/04, *supra* note 7, at 2; Tex. Att'y Gen. Op. No. JM-502 (1986); *see also* 25 TEX ADMIN. CODE § 139.4(a) (2004) ("The purpose of this section is to implement the abortion reporting requirements of the Texas Abortion Facility Reporting and Licensing Act (Act), Health and Safety Code, § 245.011, which mandates that each abortion facility must submit an annual report to the Texas Department of Health on each abortion performed at the abortion facility. This section applies to any place where abortions are performed, and therefore applies to licensed, unlicensed, and exempt facilities (including physicians).").

## B.     Questions

In light of the rule amendments, you ask several questions about the extent to which chapter 245 and the Department's rules apply to abortion facilities that are exempt from licensing. First, you ask

> (1) whether under Sections 245.009 and 245.010, Health and Safety Code, the Texas Department of Health is required to adopt minimum standards for all abortion facilities, including facilities

---

[6]The legislature first enacted the Act as article 4512.8, Revised Civil Statutes, in 1985 and then repealed article 4512.8 and codified the Act in the Health and Safety Code in 1989. *See supra* note 2. In this opinion, we refer to chapter 245's statutory predecessor as the "Act."

[7]*See* Brief from Susan K. Steeg, General Counsel, Texas Department of Health, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General at 2-3 (Feb. 5, 2004) (on file with Opinion Committee) [hereinafter TDH Brief of 2/5/04].

exempt from licensing under Section 245.004, Health and Safety Code; and

> (2) whether the rules regarding inspections of abortion facilities under Section 245.006, Health and Safety Code, and investigations of complaints regarding abortion facilities should apply to all abortion facilities, including facilities exempt from licensing under Section 245.004, Health and Safety Code.

Request Letter, *supra* note 1, at 1. In addition, if we conclude that the statutes and rules do not apply to abortion facilities that are exempt from licensing, you ask "which standards, if any, apply to these facilities and how those standards can be enforced," and "how inspections and complaint investigations are to be conducted for unlicensed facilities." *Id.* at 2.

### C.     Standard of Review

You ask us, in essence, to both construe chapter 245 and to determine if the Department's rules are valid to the extent they exclude from regulation abortion facilities that are exempt from licensing under Health and Safety Code section 245.004. Your questions suggest that the Department may have exceeded its rulemaking authority by exempting from regulation abortion facilities it is required to regulate under chapter 245.

In construing chapter 245, we must give effect to the legislature's intent. *See* TEX. GOV'T CODE ANN. §§ 311.021, .023 (Vernon 1998); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999); *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). To do so, we must first attempt to construe it according to its plain language, *see In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607-08 (Tex. 1985), considering individual provisions in the context of chapter 245 as a whole, *see Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e must always consider the statute as a whole rather than its isolated provisions. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.") (citations omitted); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (words and phrases to be read in context). We may also consider, among other things, a statute's objectives, the consequences of a particular construction, and its administrative construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see also id.* § 311.021(2)-(4) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective[,] a just and reasonable result is intended[, and] a result feasible of execution is intended . . . .").

In deciding whether the Department, an administrative agency, has exceeded its rulemaking powers, the determinative factor is whether the rule's provisions are "in harmony" with the general objectives of the statute. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995); *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968). In determining whether a rule is in harmony with an act's general objectives, courts look to all applicable provisions of that act, rather than only one particular section. *See Gerst*, 432 S.W.2d at 706. Moreover,

construction of a statute in agency rules by the administrative agency charged with the statute's enforcement "is entitled to 'serious consideration,' so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (quoting *Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944)); *see also Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001) ("we consider the agency's interpretation of its own powers only if that interpretation is reasonable and not inconsistent with the statute").

## II. Analysis

### A. Whether Health and Safety Code Sections 245.009 and 245.010 Require the Department to Adopt Minimum Standards that Apply to Abortion Facilities that are Exempt from Licensing

In its rules, the Department has interpreted the minimum standards mandated by section 245.010 of the Health and Safety Code not to apply to abortion facilities that are exempted from the section 245.003 licensing requirement by section 245.004. You ask, in essence, whether the Department has correctly construed section 245.010. *See* Request Letter, *supra* note 1, at 1 (question 1).

We begin with the text of sections 245.009 and 245.010. Section 245.009 requires the Board to adopt implementing rules, *see* TEX. HEALTH & SAFETY CODE ANN. § 245.009 (Vernon 2001), and section 245.010 requires in pertinent part that such rules "contain minimum standards to protect the health and safety of *a patient of an abortion facility*," *id.* § 245.010(a) (Vernon Supp. 2004) (emphasis added). In chapter 245, the term "abortion facility" means "a place where abortions are performed." *Id.* § 245.002(2) (Vernon 2001). The Department contends that chapter 245 does not authorize it to apply section 245.010 minimum standards to exempt abortion facilities. *See* Brief from Susan K. Steeg, General Counsel, Texas Department of Health, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General at 2-3 (Apr. 9, 2004) (on file with Opinion Committee) [hereinafter TDH Brief of 4/9/04]; *see also Gerst*, 432 S.W.2d at 706 (in considering the validity of agency rules, courts view statutes in the context of the entire statutory framework, not in isolation); *Wilkins*, 47 S.W.3d at 493 ("We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.").

The Department's interpretation of section 245.010 is based in part on section 245.004 exemption's text and legislative purpose. *See* TDH Brief of 4/9/04, at 3. The Department points out that the legislature provided three exemptions in section 245.004(a) and that the Department and the courts are required to give those exemptions meaning. *See* TEX. GOV'T CODE ANN. § 311.021(2), (4) (Vernon 1998) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective[.]"). The fact that the legislature has amended section 245.004(a) on several occasions to narrow the exemption's scope further supports the Department's position that the legislature intends

the exemption to have a substantive effect to which the Department must give meaning.[8] The Department asserts that it "give[s] effect to the legislature's exemption from licensing only by *not* enforcing regulations against *exempt* facilities that apply to licensed facilities." TDH Brief of 4/9/04, at 3.

Moreover, the Department notes that the exemption provision requires an abortion facility to be licensed under one of three other laws. *See* TEX. HEALTH & SAFETY CODE ANN. § 245.004(a)(1)-(3) (Vernon Supp. 2004). Since the Act's adoption, the Department has determined from such requirements that the legislature intended exempt facilities to be licensed and regulated under other law to avoid duplicative licensing and regulation. *See* TDH Brief of 4/9/04, at 1-2; *see also Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998) ("While not controlling, the contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to great weight."); *State v. Pub. Util. Comm'n*, 883 S.W.2d 190, 196 (Tex. 1994). An attorney general opinion construing the Act soon after its 1985 passage supports this interpretation. *See* Tex. Att'y Gen. Op. No. JM-502 (1986) at 3 ("The exemption from the licensing requirements under article 4512.8 applies only to facilities licensed under the Hospital Licensing Law or to the offices of physicians who are licensed under the Medical Practice Act. Apparently the legislature determined that 'double licensing' is unnecessary or undesirable *because the licensing requirements of those acts ensure the standards of care that the licensing requirements of article 4512.8 are intended to ensure.*") (emphasis added);[9] *see also* Tex. Att'y Gen. Op. No. GA-0152 (2004) at 2 (suggesting that court would give weight to attorney general opinion construing the Open Meetings Act shortly after its adoption). The Department's interpretation of section 245.010 not to authorize it to apply the minimum standard rules to exempt facilities is consistent with that legislative purpose. *See* TEX. GOV'T CODE ANN. § 311.023(1), (6) (Vernon 1998) (in construing a statute, a court may consider the "object sought to be obtained" and the "administrative construction of the statute").

The Department also notes that the legislature has authorized it in section 245.012 to enforce chapter 245 and the rules by disciplining licensees. *See* TEX. HEALTH & SAFETY CODE ANN. § 245.012(a)-(b) (Vernon Supp. 2004) (authorizing the Department to "deny, suspend, or revoke a license for a violation of this chapter or a rule adopted under this chapter" using contested case procedures), 245.012(c) (authorizing the Department to "immediately suspend or revoke a license when the health and safety of persons are threatened"). Section 245.011(d)(4) authorizes the Department to release information it holds under chapter 245, which is generally confidential, "to

---

[8]*See* Act of May 29, 1999, 76th Leg., R.S., ch. 1411, § 22.01, 1999 Tex. Gen. Laws 4761, 4820; Acts of May 23 and June 1, 2003, *supra* note 4 (narrowing scope of exemption for physician offices).

[9]Attorney General Opinion JM-502 concluded that requiring all abortion facilities to report under the Act is consistent with the reporting requirement's purpose, gathering statistics. *See* Tex. Att'y Gen. Op. No. JM-502 (1986) at 3 (noting that the Act's reporting requirements "are at least in part for statistical purposes" and that "[i]t makes sense to compile statistics regarding abortions from all facilities at which abortions are performed, not just those licensed under" the Act). The opinion does not suggest that exempt facilities are otherwise subject to regulation under the Act. Moreover, the opinion's discussion of the legislature's intent to avoid double licensing because other licensing laws "ensure [] standards of care" is consistent with the conclusion that exempt facilities are not subject to minimum standards adopted pursuant to section 245.010. *See id.*

appropriate state licensing boards to enforce state licensing laws." *Id.* § 245.011(d)(4) (Vernon 2001). Aside from releasing information to other licensing boards, chapter 245 does not provide that the Department may take action with respect to licenses issued under other law. The Department's enforcement authority under section 245.012 hinges on its authority with respect to licenses issued under chapter 245 and does not extend to licenses issued under other law. *See id.* §§ 245.003(a), .005, .011(d)(4) (Vernon 2001), 245.012 (Vernon Supp. 2004). Chapter 245 does not authorize the Department to deny, suspend, or revoke licenses of facilities that are not required to obtain a chapter 245 license or to comply with chapter 245. The fact that the Department's authority to suspend and revoke licenses is limited to chapter 245 licensees further supports the conclusion that the legislature did not intend chapter 245 to require the Department to adopt minimum standards governing exempt facilities, which are licensed, regulated, and disciplined under other law. *See* TEX. GOV'T CODE ANN. § 311.021(4) (Vernon 1998) ("In enacting a statute, it is presumed that . . . a result feasible of execution is intended . . . ."); *see also* pt. II.C *infra* (noting that exempt facilities are subject to license denial, suspension, and revocation under other law).

On the basis of the foregoing, the Department has reasonably concluded that the legislature intended chapter 245 as a whole to preclude the Department from generally regulating exempt facilities. In essence, the section 245.010 requirement that the Department adopt minimum standards to protect licensed abortion facility patients' health and safety delegates to the Department additional authority to regulate licensed abortion facilities by rule. Given that chapter 245 as a whole does not generally authorize the Department to regulate exempt facilities, the Department's interpretation that section 245.010 precludes it from applying the minimum standards to exempt facilities is in harmony with chapter 245 as a whole.

Furthermore, we also conclude that the Department's interpretation is reasonable because it does not leave patients unprotected. Other licensing laws provide for exempt facilities' licensing and regulation and protect patients' health and safety. *See* pt. II.C *infra*. In addition, the Department's construction avoids duplicative regulation. Accordingly, we conclude that the Department's rules do not violate section 245.010 by failing to apply the regulatory minimum standards to facilities that are exempt from licensing under section 245.004.

B. **Whether Department of Health Rules Regarding Inspections and Complaints Should Apply to Abortion Facilities that are Exempt from Licensing**

Next you ask whether the Department of Health's rules regarding inspections of abortion facilities under section 245.006, Health and Safety Code, and investigations of complaints regarding abortion facilities should apply to all abortion facilities. *See* Request Letter, *supra* note 1, at 1 (question 2).

Section 245.006 provides:

> (a) The department may inspect an abortion facility at reasonable times as necessary to ensure compliance with this chapter.

(b) The department shall inspect an abortion facility before renewing the facility's license under Section 245.005(e).

TEX. HEALTH & SAFETY CODE ANN. § 245.006 (Vernon 2001). The Department's rules provide for on-site inspections of licensed abortion facilities but not facilities that are exempt from licensing. *See* 29 Tex. Reg. 987 (2004) (to be codified as an amendment to 25 TEX. ADMIN. CODE § 139.31(a)) (Tex. Dep't of Health) (Abortion Facility Reporting and Licensing Rules); 25 TEX. ADMIN. CODE § 139.31(a) (2004), WL 25 TAC s 139.31(a). While chapter 245 does not expressly provide for on-site inspections of abortion facilities in response to complaints, the Department's rules provide for such inspections with regard to licensed abortion facilities. *See* 25 TEX. ADMIN. CODE § 139.31(a) (2004), WL 25 TAC s 139.31(c). The rules provide that the Department "shall refer issues and complaints relating to the conduct or action(s) by licensed health care professionals to their appropriate licensing boards." *Id.*, WL 25 TAC s 139.31(c)(9).

The Department's rule on inspections is consistent with its statutory authority and in harmony with chapter 245. By its plain terms, section 245.006(b), which provides for inspection prior to license renewal, does not apply to facilities that are exempt from licensing under chapter 245. *See* TEX. HEALTH & SAFETY CODE ANN. § 245.006(b) (Vernon 2001) ("The department shall inspect an abortion facility before renewing the facility's license under Section 245.005(e)."). Section 245.006(a) more broadly provides that "[t]he department may inspect an abortion facility at reasonable times as necessary to ensure compliance with this chapter." *Id.* § 245.006(b). Given that an exempt facility is not generally required to comply with chapter 245, *see* pt. II.A *supra*, however, section 245.006(a) does not authorize the Department to inspect one. *See* TEX. HEALTH & SAFETY CODE ANN. § 245.006(a) (Vernon 2001) ("The department may inspect an abortion facility at reasonable times as necessary *to ensure compliance with this chapter*.") (emphasis added). Furthermore, we note that exempt hospitals and ambulatory surgical centers are subject to inspection under their licensing laws. *See id.* §§ 241.051(a) ("The department may make any inspection, survey, or investigation that it considers necessary. A representative of the department may enter the premises of a hospital at any reasonable time to make an inspection, a survey, or an investigation to assure compliance with or prevent a violation of this chapter, the rules adopted under this chapter, an order or special order of the commissioner of health, a special license provision, a court order granting injunctive relief, or other enforcement procedures."), 243.006(a) ("The department may inspect an ambulatory surgical center at reasonable times as necessary to assure compliance with this chapter."), 243.006(b) ("An ambulatory surgical center licensed by the department and certified under [42 U.S.C. Section 1395] is subject to an on-site licensing inspection under this chapter once every three years while the center maintains the certification.").

## C. Which Standards Apply to Abortion Facilities that are Exempt from Licensing under Health and Safety Code Chapter 245

Finally, if we conclude that the Department's minimum standard, inspection, and complaint investigation rules do not apply to abortion facilities that are exempt from licensing, you ask "which standards, if any, apply to these facilities and how those standards can be enforced," and

"how inspections and complaint investigations are to be conducted for unlicensed facilities." Request Letter, *supra* note 1, at 2.

The Department regulates hospitals and ambulatory surgical centers under chapters 241 and 243 of the Health and Safety Code. Chapter 241, the Texas Hospital Licensing Law, provides for hospital licensing and requires the Board of Health to adopt rules protecting patients' health and safety. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 241.021 (Vernon 2001) (hospital license requirement), 241.026(a) (Vernon Supp. 2004) (requiring the Board of Health to "adopt and enforce rules to further the purposes of this chapter" that "at a minimum . . . address (1) minimum requirements for staffing by physicians and nurses; (2) hospital services relating to patient care; (3) fire prevention, safety, and sanitation requirements in hospitals; (4) patient care and a patient bill of rights; [and] (5) compliance with other state and federal laws affecting the health, safety, and rights of hospital patients"). Chapter 243, the Texas Ambulatory Surgical Center Licensing Act, contains similar requirements, *see id.* §§ 243.003 (Vernon 2001) (ambulatory surgical center license requirement), 243.009-.010 (requiring Board of Health to adopt rules implementing chapter 243, including minimum standards regarding such matters as "the qualifications of the professional staff and other personnel"; "the equipment essential to the health and welfare of the patients"; "sanitary and hygienic conditions"; and "a quality assurance program for patient care"). Both chapters authorize the Department to bring enforcement actions against hospitals and ambulatory surgical centers, *see id.* §§ 241.053-.60 (Vernon 2001 & Supp. 2004) (including authority to deny, suspend, or revoke a hospital license), 243.011-.016 (including authority to deny, suspend, or revoke an ambulatory surgical center license), and to inspect them for regulatory compliance purposes, *see id.* §§ 241.051(a), 243.006(a) (Vernon 2001).

In addition, the Department is charged with enforcing the Woman's Right to Know Act, Health and Safety Code, chapter 171, and with publishing informed consent materials. *See id.* §§ 171.005 (Vernon Supp. 2004) ("The department shall enforce this chapter."), 171.014 (requiring Department to publish informational materials); *see also id.* § 11.001(3) (Vernon 2001) ("In this title 'Department' means the Texas Department of Health."). Chapter 171 applies to any person who performs an abortion and makes no exception for a person who performs an abortion at a hospital, ambulatory surgical center, or physician office that is exempt from regulation under chapter 245. *See id.* § 171.011 (Vernon Supp. 2004) ("*A person* may not perform an abortion without the voluntary and informed consent of the woman on whom the abortion is to be performed.") (emphasis added); *see also id.* §§ 171.003 ("An abortion may be performed only by a physician licensed to practice medicine in this state."), 171.018 ("A physician who intentionally performs an abortion on a woman in violation of this subchapter commits an offense.").

The Medical Practice Act vests the Texas Board of Medical Examiners with the authority to adopt rules to regulate the practice of medicine and to enforce the Act and requires medical licensing. *See* TEX. OCC. CODE ANN. ch. 151, subtit. B (Medical Practice Act) (Vernon 2004), *id.* §§ 153.001(3)-(4) (Board of Medical Examiners authorized to adopt rules to regulate the practice of medicine and enforce the Medical Practice Act), 155.001 (medical license requirement). The Medical Practice Act also requires the Board of Medical Examiners to investigate complaints against physicians, to adopt rules establishing procedures for handling complaints, and to discipline

physicians based on complaints. *See id.* § 153.012 (requiring board to adopt rules regarding complaints and to assist complainants), ch. 154, subch. B (complaint procedures), § 154.056 (requiring board to adopt rules concerning complaint investigation and review), ch. 164 (disciplinary actions and procedures).

We note that the Board of Medical Examiners' authority over physicians appears somewhat less extensive than the Department of Health's authority over hospitals and ambulatory surgical centers, particularly with respect to inspections. Should the legislature determine that physicians who perform abortions at exempt offices are not adequately regulated under the Medical Practice Act, it may amend chapter 245 to license and regulate a greater number of physician offices, or all of them. *See Bell*, 248 F.3d at 419 (noting that the state could require all abortion providers to be licensed under chapter 245).[10]

---

[10]In reviewing the constitutionality of the 1999 amendment to section 245.004, the federal appellate court stated: "All that is required to survive rational basis review is a showing that the classification under examination conceivably could be related to a legitimate governmental purpose. The court found . . . that the 1999 amendments have the legitimate state purpose of protecting the health of Texas women. The court's inquiry, therefore, is properly limited to whether a classification based on the number of abortions performed at a facility rationally serves that general purpose. . . . Because without violating the Constitution, *the State could have required all abortion providers to be licensed*, it rationally could set an annual 300-abortion 'floor' as an accommodation to private physicians who provide a number of abortions that the government considers to be too few to require licensing. Whether the court agrees with the accuracy of the line of demarcation drawn by the Legislature to distinguish the classification is of no great moment." *Bell*, 248 F.3d at 419 (emphasis added).

## SUMMARY

Health and Safety Code chapter 245, the Texas Abortion Facility Reporting and Licensing Act, exempts hospitals, ambulatory surgical centers, and certain physician offices that perform abortions from licensing under chapter 245. Texas Department of Health rules adopted under chapter 245 are consistent with chapter 245 to the extent that they do not apply the section 245.010 minimum standards to abortion facilities that are not required to be licensed under chapter 245. The rules are also consistent with chapter 245 to the extent they provide that such abortion facilities are not subject to inspection by the Department under section 245.006.

Exempt hospitals, ambulatory surgical centers, and physician offices are licensed and regulated under the Hospital Licensing Law, Texas Ambulatory Surgical Center Licensing Act, and the Medical Practice Act, respectively. *See* TEX. HEALTH & SAFETY CODE ANN. chs. 241, 243 (Vernon 2001 & Supp. 2004); TEX. OCC. CODE ANN. ch. 151, subtit. B (Vernon 2004). Those statutes provide the relevant regulatory bodies with authority to adopt standards protecting patients and to enforce those standards against their licensees.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee