# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00483-CV

### Texas Property and Casualty Insurance Guaranty Association for Reliance National Insurance Company, an impaired company, Appellant

### v.

### Doris J. Toberny, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-06-003295, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment issued December 9, 2009, and substitute the following opinion in lieu of the earlier one.

Appellant Texas Property and Casualty Insurance Guaranty Association for Reliance National Insurance Company, an impaired company[1] ("the Company"), filed suit against appellee Doris J. Toberny for judicial review of a decision of the Division of Workers' Compensation of the Texas Department of Insurance ("the Division"). The district court entered a final judgment in favor

---

[1] For simplicity, we refer to both Reliance National Insurance Company and its receiver and successor in interest, Texas Property and Casualty Insurance Guaranty Association, as "the Company."

of Toberny on all issues on which the Company sought judicial review. In four issues on appeal, the Company asserts that (1) the Division's calculation of Toberny's impairment rating is incorrect; (2) Toberny's compensable injuries do not include her pre-existing scoliosis and degenerative disc disease; (3) Toberny was not entitled to supplemental income benefits[2] for the ninth and tenth quarters; and (4) the Company was not obligated to pay Toberny's attorney's fees. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Toberny was employed as an exhibit decorator, setting up and tearing down trade show exhibits. She injured her back on May 10, 2000, when a registration unit fell on her while she was working. She sought care with her company doctor, who recommended therapy. After therapy failed to alleviate her pain, Toberny underwent a nine-level spinal-fusion surgery, performed in two parts, during which her pre-existing scoliosis was corrected. The surgery left her unable to work and partially physically impaired. The Company paid for Toberny's surgery as part of a compensable injury related to her on-the-job injury. However, in December 2001 the Company sent Toberny a notice of refused or disputed claim, asserting that her May 10, 2000 injury was a sprain or strain to her lower back only and was not the producing cause of the diagnosis or treatment of scoliosis. The Company did not, at that time, pursue its disputed claim at a contested-case hearing in the Division to determine the extent of Toberny's compensable injury.

---

[2] Supplemental income benefits are paid to injured workers whose other income benefits have run out, who have an impairment rating of 15 percent or greater, and who meet other required statutory criteria. Tex. Lab. Code Ann. § 408.142(a) (West 2006).

On June 26, 2002, Toberny visited Dr. Remon A. Fino to have him assess whether she had reached maximum medical improvement[3] ("MMI") and, if so, to have him assign a whole-body impairment rating.[4] Dr. Fino examined Toberny, decided that she had reached MMI, and assigned her a 15-percent impairment rating. On July 17, 2002, the Company timely filed an impairment-rating dispute with the Department to contest Dr. Fino's findings. The Division appointed a designated doctor, Dr. Soignier, to independently determine Toberny's date of MMI and her impairment rating. *See* Tex. Lab. Code Ann. § 408.0041 (West 2006). Dr. Soignier determined that Toberny reached MMI on June 26, 2002 and assigned her a 25-percent impairment rating. After that designation, the Company did not initiate any further dispute-resolution procedures, but rather paid Toberny benefits, including eight quarters of supplemental income benefits based on her 25-percent impairment rating, until more than three years later when it contested the propriety of her impairment rating and began the proceedings that form the basis of this appeal.

On September 22, 2005, the Company filed a request with the Division to hold a benefit-review conference concerning Toberny's injuries. The Company's request stated that it was "disputing [that] the claimant's current medical condition is related to the compensable lumbar strain," and also stated that it "asserts the continued medical treatment is related to the claimant's

---

[3] A worker reaches maximum medical improvement (1) when her condition stabilizes, (2) even if her condition has not yet stabilized, at two years from the date of her injury, or (3) in the case of a worker who has had spinal surgery and whose condition has not stabilized within two years from the date of injury, at some later date as decided by the Division pursuant to labor code section 408.104 and the Division's rules. *Id.* § 401.011(30).

[4] A doctor assigns an impairment rating pursuant to guidelines specified by statute. *See id*. § 408.124. The rating is given as a percentage of whole-body impairment resulting from a compensable injury. *Id.* § 401.011(24).

pre-existing scoliosis and degenerative disc disease." The Company sought permission to discontinue providing "medical treatment and/or any indemnity benefits." On October 4, 2005, the Division denied the Company's request for a review conference, stating: "[I]t is the injured workers' [sic] responsibility to pursue extent of injury issues."

Although it is unclear which party requested the next benefit-review conference, the record indicates that the Division held a conference in the Tyler field office on March 3, 2006 in order "to mediate resolution of disputed issues." The parties were unable to come to an agreement, so the Division held a benefit contested-case hearing on April 25, 2006. After taking evidence, the hearing officer issued a "decision and order" in which he found that the medical evidence was uniform in stating that Toberny's pre-existing scoliosis and degenerative disc disease were not aggravated by her on-the-job injury and that her surgery was done to alleviate problems from pre-existing conditions only. In addition, however, the hearing officer noted that despite having filed its dispute to Toberny's first impairment rating in December of 2001, the Company did not file a dispute to Dr. Soignier's 25-percent impairment rating until September 21, 2005, almost four years later, and nearly a year and a half after the first three months of Toberny's supplemental income benefits had been paid. The hearing officer concluded that because the Company had no "pending dispute" to Toberny's MMI and impairment rating designations before March 3, 2004—the end of the first quarter of supplemental income benefits—it had waived its right to contest her MMI or impairment rating under rule 130.102(g). *See* 28 Tex. Admin. Code § 130.102(g) (2000) (Tex. Div. Workers' Comp., Eligibility for Supplemental Income Benefits, Amount), *recodified at* 28 Tex. Admin. Code § 130.102(h) by 34 Tex. Reg. 2138 (hereinafter "former rule 130.102(g)"). Because

4

the Company had waived its right to contest Toberny's impairment rating, the hearing officer found that (1) Toberny reached MMI on June 26, 2002, (2) her impairment rating is 25 percent, (3) her compensable injury extends to the diagnosed conditions of scoliosis and degenerative disc disease, and (4) Toberny was entitled to continued supplemental income benefits for the ninth and tenth quarters. The Division accepted the decision and order of the hearing officer and adopted it as a final decision of the agency without issuing a written opinion.

The Company filed suit for judicial review of the Division's final order pursuant to labor code section 410.301, the statute that provides for "modified trial de novo" in the district court. Tex. Lab. Code Ann. § 410.301 (West 2006). After a bench trial, the court rendered judgment affirming the Division's final order. The judgment stated, in pertinent part, that (1) the deadline in former rule 130.102(g) is reasonable and valid; (2) Toberny's compensable injury includes the diagnoses of scoliosis and degenerative disc disease; (3) the Company waived the right to contest compensability by failing to contest the impairment rating in the time allowed by former rule 130.102(g); (4) Toberny's impairment rating is 25 percent because of the Company's failure to timely contest the rating; (5) Toberny is entitled to supplemental income benefits for the ninth and tenth compensable quarters; (6) Toberny is entitled to $19,000 in attorney's fees for defending her suit for judicial review in the trial court; and (7) should she be successful in this Court, a reasonable and necessary amount of attorney's fees for her appeal would be $15,000. The Company appeals.

## STANDARD OF REVIEW

In cases like the present one that ultimately involve issues regarding compensability and eligibility for income benefits, judicial review of the Division's decision is by modified de

5

novo trial. *See id.* § 410.301-.308 (West 2006); *see also Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 519 (Tex. 2007). The party appealing the Division's decision, in this case the Company, bears the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303. When, as here, the court sits without a jury, the court "shall consider the decision of the appeals panel" in its deliberation but is not bound by it. *Id.* § 410.304(b); *Morales*, 241 S.W.3d at 516. In determining an impairment rating, the court must adopt one of the specific ratings previously rendered by a physician. Tex. Lab. Code Ann. § 410.306(c).

Insofar as a party claims that an agency acted beyond its statutory authority in adopting a rule, our review is de novo. *Guitar Holding Co. v. Hudspeth County Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 917 (Tex. 2008). "An agency may adopt only such rules as are authorized by and consistent with its statutory authority." *Pruett v. Harris County Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008) (citing *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992)). That authority can be express or implied. *Id.* "In deciding whether a particular administrative agency has exceeded its rule-making powers, the determinative factor is whether the rule's provisions are 'in harmony with the general objectives of the Act involved.'" *Id.* (quoting *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968)).

**DISCUSSION**

In its first issue, the Company asserts three arguments why Toberny's impairment rating is not 25 percent: (1) former rule 130.102(g) is invalid and therefore any impairment rating based on that rule is also invalid; (2) even if former rule 130.102(g) is valid, the Company did not waive its right to challenge Toberny's MMI and impairment rating because there was a

6

"pending dispute" as that term is used in the rule; and (3) the evidence conclusively establishes that the impairment rating was made using non-compensable conditions. We will address each assertion in turn.

***Validity of Former Rule 130.102(g)***

The Company asserts that former rule 130.102(g) is invalid because it places an additional burden on workers' compensation participants not contemplated by statute. It cites to this Court's opinion in *Fulton v. Associated Indemnity Corp.*, 46 S.W.3d 354 (Tex. App.—Austin 2001, pet. denied), for support. The Company also asserts that "the legislature's creation of a specific standard for impairment rating finality, which omits all other forms of finality, precludes the finality contained in Rule 130.102(g)."

Rule 130.102 concerns the eligibility of workers for supplemental income benefits. Payment of supplemental income benefits is based on a worker's impairment rating, which is assigned after a worker has reached MMI. *See* 28 Tex. Admin. Code § 130.102(b) (2008) (injured employee must have 15-percent or greater impairment rating and meet other requirements to be eligible for supplemental income benefits); 28 Tex. Admin. Code § 130.1(b)-(c) (2008) (Div. of Workers' Comp., Certification of MMI and Eval. of Permanent Impairment) (detailing how to certify MMI and assign impairment rating). Former rule 130.102(g) finalized a worker's MMI date and impairment rating if there was no pending dispute prior to the end of the first quarter of supplemental income benefits. The rule states:

> If there is no pending dispute regarding the date of maximum medical improvement
> or the impairment rating prior to the expiration of the first quarter, the date of

7

maximum medical improvement and the impairment rating shall be final and binding.

Former rule 130.102(g).

The Company argues that the rule is invalid because it creates a "statute of limitations" for challenging MMI and impairment ratings.  It asserts that the rule "preclude[s] a carrier from challenging the relationship of any condition in such an impairment rating after the expiration of the first quarter of [supplemental income benefits]," and therefore improperly places an additional burden on the Company not contemplated by statute, akin to the rule this Court held invalid in *Fulton*.

In *Fulton*, this Court invalidated a Division rule that barred a *worker's* right to bring a challenge to his impairment rating after 90 days from the date the impairment rating was assigned.  Citing to the supreme court's decision in *Rodriguez v. Service Lloyds Insurance Co.*, 997 S.W.2d 248 (Tex. 1999), we discussed, as an initial matter, the proposition that MMI and impairment ratings are inextricably linked, and that making a rule that limits a worker from contesting his impairment rating has the practical effect of limiting his right to contest the date his MMI became final.  *Fulton*, 46 S.W.3d at 371.  This connection was important to our holding because the supreme court had previously upheld the Workers' Compensation Act's use of MMI, which by statute must be finally determined no more than two years after a worker's injury, as a constitutionally adequate substitute for workers' negligence remedies.  *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995).  Until he has reached MMI, a worker may be entitled to temporary income benefits, which the supreme court in *Garcia* called a

8

"major benefit." *Id.* The court in *Garcia* said that restricting temporary income benefits to a maximum of two years, which the Act does by deeming a worker to have reached MMI upon the expiration of two years regardless of his actual condition, was only justified by medical testimony that indicated the vast majority of workers' conditions stabilize within two years. *Id.* We reasoned in *Fulton* that if a rule cuts off temporary income benefits before the worker's condition has had two years to stabilize, that rule "might be deemed arbitrary and might call into question the adequacy of the entire statutory quid pro quo approved in *Garcia*." *Fulton*, 46 S.W.3d at 370. We held that the rule in *Fulton* was "arbitrary and invalid because it impermissibly shorten[ed] the statutory time period allotted to an injured worker to achieve MMI." *Id.* at 372.

Central to our holding were two tenets of construction relevant to the Workers' Compensation Act. First, we liberally construe the Act to effectuate its purpose of compensating injured workers and their families. *Id.* at 370 (citing *Albertson's Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999)). Second, "[a]n agency may not supply by implication restrictions on an employee's rights that are not found in the plain language of the Act." *Id.* (citing *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000)) (emphasis added).

The reasoning that underpins *Fulton* does not avail the Company in this case. As noted above, "[i]n deciding whether a particular administrative agency has exceeded its rule-making powers, the determinative factor is whether the rule's provisions are 'in harmony with the general objectives of the Act involved.'" *Pruett*, 249 S.W.3d at 452 (quoting *Gerst*, 432 S.W.2d at 706). Former rule 130.102(g), as applied in this case to bar the Company from contesting Toberny's MMI and impairment rating long after they were determined, is in harmony with the objectives of the Act.

9

It provides finality for an injured worker, helping to compensate the worker and her family for on-the-job injuries. It is also consistent with the broad rule-making authority granted to the Division by statute. *See* Tex. Lab. Code Ann. § 402.061 (West 2006). The question of whether the rule supplies by implication any impermissible restrictions on an *employee's* rights not contemplated by statute is not before us. With respect to the circumstances presented by this case, *Fulton* does not compel the rule's nullification.

The Company urges us to hold former rule 130.102(g)—now current rule 130.102(h)—invalid because the legislature enacted a statute specifically addressing the finality of impairment ratings. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1190, § 1, 2003 Tex. Gen. Laws 3397, 3397-98 (codified at Tex. Lab. Code Ann. § 408.123(d)-(g) (West 2006)). Since the legislature has specifically addressed finality of impairment ratings in a statute, the Company asserts that former rule 130.102(g), which ties finality to the receipt of supplemental income benefits, is incompatible with the statute and cites *Mid-Century Insurance Co. v. Kidd*, 997 S.W.2d 265, 273 (Tex. 1999) (explaining doctrine that legislature's expression of one thing means its exclusion of all others). We express no opinion as to the applicability of that doctrine in this situation because labor code section 408.123 does not apply to this case. The 2003 amendment of the labor code provides that "[t]he change in law made by this Act by amendment"—adding the sections to which the Company cites—"applies only to a certification of maximum medical improvement and assignment of an impairment rating that is made on or after the effective date [June 20, 2003] of this Act." *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1190, § 2, 2003 Tex. Gen. Laws 3397, 3397-98. Both

of Toberny's MMI and impairment-rating designations were made in 2002. Since the statute does not apply to this case, we need not address whether the rule is in conflict with it.

### *Pending Dispute*

Having found the rule valid in this case, we next address the Company's assertion that it had a "pending dispute" within the meaning of former rule 130.102(g) and therefore has not waived its right to contest Toberny's impairment rating. As noted above, on July 17, 2002, the Company disputed Toberny's first impairment rating, which led to the Division's designation of another doctor, a second exam, and a new impairment rating. The Company asserts that its original dispute remains pending, however, and has been pending ever since 2002 because "[t]he passage of time does not negate the pending nature of a dispute," despite the fact that the Company did nothing else to dispute Toberny's second impairment rating until September 22, 2005—more than three years after it filed its first objection to her impairment rating. The Company argues that the original dispute was not resolved by the designation of a doctor and that doctor's subsequent determination of an MMI date and impairment rating, but remains "pending" forever until formally and finally decided by, we assume, either the Division or the courts. The Company cites to several Division appeals panel decisions for support of its argument. Decisions of the Division's appeals panel in other cases, of course, are not binding on this Court.

In the present case, the Company presented no affirmative notice or evidence to the Division that there was still a pending dispute between Toberny and the Company regarding her MMI or impairment rating between the time of the Company's first impairment-rating dispute in 2002 and the expiration of the first quarter of Toberny's supplemental income benefits more than

11

two years later. The Company argues that its complete inaction during this time does not matter because an impairment-rating dispute is finally resolved only by utilizing the procedures laid out in chapter 410 of the labor code. *See* Tex. Lab. Code Ann. §§ 410.002-.308 (West 2006 & West Supp. 2009). We note that those dispute-resolution procedures were available to the Company for more than three years after the Company requested a designated-doctor review, yet it failed to employ them.

Although the term "pending dispute" is not defined in the rule, it was not unreasonable for the Division to require the Company to exercise some diligence with respect to the prosecution of its dispute in order for that dispute to remain "pending" for the purposes of former rule 130.102(g). To decide otherwise would permit the Company to request a designated-doctor review and then wait ten, fifteen, or even twenty years without any further indication that it had a continued dispute about the designated doctor's rating[5]—the entire time paying benefits and otherwise acting as if there were no pending dispute—before employing the dispute-resolution procedures in chapter 410. This lack of finality is at odds with the Workers' Compensation Act's purpose of providing compensation to injured workers and their families. In light of the lack of evidence of a pending dispute in the present case, the Division did not err by deciding that there was

---

[5] For example, the labor code, as it existed when the designated doctor rendered his impairment rating, allowed a carrier that was unsatisfied with the designated doctor's impairment rating to request that the Division order the employee "to attend an examination by a doctor selected by the insurance carrier." Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 5.02, 2001 Tex. Gen. Laws 5167, 5182 (formerly Tex. Lab. Code Ann. § 408.0041(f)).

no pending dispute within the meaning of former rule 130.102(g), nor did the trial court err in affirming the Division.[6]

### Compensability, Extent of Injury, and Waiver Under Rule 130.102(g)

The Company next asserts that Toberny's impairment rating is not 25 percent because a worker's impairment rating must be based on compensable medical conditions and there is conclusive evidence that her impairment rating was based only on non-compensable conditions. The Company also claims that the "compensable injury does not extend to and include the diagnosed conditions of scoliosis and degenerative disc disease of the lumbar and thoracic spine," as found by the Division and the trial court, because there is legally and factually insufficient evidence to support that conclusion. In post-submission briefing and on motion for rehearing, the Company also asserts that the Texas Supreme Court's recent decision in *State Office of Risk Management v. Lawton*, 295 S.W.3d 646 (Tex. 2009), a case addressing the deadlines for contesting extent of injury, is dispositive of this case.

These arguments involve at least three interrelated concepts, which we first define before discussing in more depth. A compensable injury is defined as "an injury that arises out of and in the course and scope of employment for which compensation is payable under [subtitle A of the Workers' Compensation Act]." Tex. Lab. Code Ann. § 401.011(10). An impairment rating is defined as "the percentage of permanent impairment of the whole body resulting from a compensable

---

[6] We note that the legislature has since amended the labor code to address the issue of impairment-rating finality. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 1190, § 1, 2003 Tex. Gen. Laws 3397, 3397-98 (codified at Tex. Lab. Code Ann. § 408.123(d)-(g) (West 2006)). Section 408.123 finalizes undisputed impairment ratings within 91 days of certification, subject to reexamination in certain limited cases. Tex. Lab. Code Ann. § 408.123(e), (f) (West 2006).

injury." *Id.* § 401.011(24). The term "extent of injury" is not defined in the code, but relates to situations where a worker who has sustained an otherwise compensable injury receives treatment for an injury or other condition that is unrelated to the compensable injury. *See id*. § 408.0042 (West 2006) (contextually defining extent of injury as "treatment . . . for an injury or diagnosis unrelated to the compensable injury").

In the present case, the Division and the trial court found that Toberny's compensable conditions extended to the diagnosed conditions of scoliosis and degenerative disc disease, conditions that the Company asserts are beyond the extent of the compensable low-back strain injury that Toberny suffered. The Division found that former rule 130.102(g) operated to deem those conditions compensable, reasoning that because the rule finalized Toberny's impairment rating, and because an impairment rating is calculated using only compensable conditions, the conditions that went into calculating Toberny's impairment rating—scoliosis and degenerative disc disease—became compensable as well. The Company argues that the plain language of the rule does not address compensability and that it was error for the Division and the trial court to read that requirement into the rule.

While it is true that the plain language of the rule does not address compensability, for the rule to operate to finalize an impairment rating, it is necessary to imply that any condition used to calculate that rating must be *deemed* compensable for the purpose of that calculation. If the compensability of the conditions used to calculate the impairment rating were forever subject to review, and, if a future finding that a condition used to calculate an impairment rating was not compensable could invalidate a prior, finalized rating, then the rule could never truly finalize a

14

rating. For us to hold otherwise here would effectively nullify the rule. Therefore, even assuming that Toberny's impairment rating was made with non-compensable conditions, the rule functioned to deem them compensable for the purpose of computing the impairment rating.[7] It was not, therefore, error for the Division and the trial court to conclude that Toberny's compensable injury extends to the diagnosed conditions of degenerative disc disease and scoliosis for the purpose of computing her impairment rating.[8]

Arguing that it can never waive its right to contest the extent of Toberny's compensable injury, the Company cites *Lawton*, a recent supreme court decision addressing whether the 60-day deadline for an insurance carrier to contest compensability also forecloses a contest to extent of injury if the carrier had notice of the facts underlying the extent-of-injury dispute before the 60th day. *See* 295 S.W.3d at 647; *see also* Tex. Lab. Code Ann. § 409.021(c) (West 2006) (waiving carrier's right to contest compensability if not filed within 60 days from date it was notified

---

[7] We note that with the adoption of section 408.123(f) in 2003, the legislature addressed this issue directly by providing that a finalized impairment rating can be disputed based on "compelling medical evidence" evincing (1) a significant error in applying the American Medical Association Guidelines or in calculating the impairment rating, (2) a clearly mistaken diagnosis or undiagnosed condition, (3) improper or inadequate treatment of the injury that would render the impairment rating invalid, or (4) other "compelling circumstances" as decided by the Division. *Id.* § 408.123(f)(1). For reasons noted above, this procedure was not available to the parties in the present case, but will govern future cases with respect to this issue.

[8] Our opinion clarifies the trial court's judgment with respect to its findings of the extent of Tobery's compensable conditions. The trial court's judgment states that "[t]he compensable injury of May 10, 2000, does extend to and include the diagnosed conditions of scoliosis and degenerative disc disease of the lumbar and thoracic spine." Those conditions *are* deemed compensable for the purpose of Toberny's finalized 25-percent impairment rating. For reasons discussed below, deeming these conditions compensable for the purpose of Toberny's finalized impairment rating does not mean that the Company has waived, for all time, its ability to bring an extent-of-injury contest, but it does prohibit any such challenge from disturbing Toberny's finalized 25-percent impairment rating.

of employee's injury). In *Lawton*, the carrier received notice that Lawton needed surgery on her knee—a treatment it would later contend was unrelated to her compensable injury—before the expiration of 60 days from the date it was notified of her injury. 295 S.W.3d at 647. It failed to bring a dispute within the 60-day time period. *Id.* Shortly after the 60-day window, the carrier filed a notice that it was contesting the extent of Lawton's compensable injury. *Id.* The Division found that because the carrier had notice of Lawton's supposed need for surgery before the end of the 60-day time period, a reasonable investigation on their part would have led them to discover the full extent of her claimed injury within that period. *Id.* The Division reasoned that since the carrier failed to file a contest within the 60-day window, it waived its right to later contest whether Lawton's compensable injury included the conditions for which she required surgery. *Id.* The trial court and the court of appeals affirmed.

In reversing the court of appeals, the supreme court held that labor code section 409.021(c) applies only to contests about compensability; its deadline does not operate to foreclose disputes regarding the *extent* of a compensable injury. *Id.* at 648. That function, the court said, is performed by Division rule 124.3(e), which states:

> Texas Labor Code, §409.021 and subsection (a) of this section do not apply to disputes of extent of injury. If a carrier receives a medical bill that involves treatment(s) or service(s) that the carrier believes is not related to the compensable injury, the carrier shall file a notice of dispute of extent of injury (notice of dispute). The notice of dispute shall be filed in accordance with §124.2 of this title (relating to Carrier Reporting and Notification Requirements) and be filed not later than the earlier of:
>
> (1)     the date the carrier denied the medical bill; or

(2)      the due date for the carrier to pay or deny the medical bill as provided in Chapter 133 of this title (relating to General Medical Provisions).

28 Tex. Admin. Code § 124.3(e) (2009) (Tex. Div. Workers' Comp., Investigation of an Injury and Notice of Denial/Dispute); *see Lawton*, 295 S.W.3d at 650-51. The court held that the carrier did not waive its right to contest extent of injury because it met the deadline set out in the rule. *Lawton*, 295 S.W.3d at 650-51.

The Company asserts that *Lawton* is dispositive here. It argues that, like the carrier in *Lawton*, it does not dispute that Toberny was injured, or that her on-the-job injury was compensable. Rather, the Company disputes that some of the medical treatment she received was for conditions unrelated to her compensable injury, and that those conditions improperly formed the basis of her impairment rating. The Company asserts that *Lawton* decided the issue of whether "extent of injury disputes may be waived through carrier inaction." The Company also asserts that the reasoning in *Lawton* means that "[t]o the extent that the Appeals Panel has recognized the concept of extent of injury waiver under Rule 130.102(g) it has engaged in improper *ad hoc* rulemaking." We conclude that *Lawton* is not dispositive here.

First, *Lawton* did not decide the issue of whether "extent-of-injury disputes may be waived by carrier inaction." It decided that the carrier does not waive its extent-of-injury dispute if it fails to bring the dispute within the 60-day statutory window to contest compensability, even though it was put on notice of the extent of the claimant's claimed compensable injury. *Id.* Its deadline to contest the extent of the claimant's injury is governed by rule 124.3(e). *Id.* Second, contrary to the Company's assertion, the *Lawton* court did not hold that there "are no

17

deadlines" to contest extent of injury. It held that extent-of-injury dispute deadlines are found in the rule.[9] *Id.* If, in the present case, Toberny submits a medical bill for treatment that, to the Company, seems to exceed the scope of her compensable injury, nothing in our holding here would foreclose it from filing a dispute with the Division based on extent of injury.[10] What that dispute cannot do is reopen long-closed wounds, so to speak, to render an otherwise final impairment rating invalid. Doing so is supported neither by the common-sense application of former rule 130.102(g) nor by the holding and the reasoning of *Lawton*.[11]

### Others Issues Fail Due to Waiver

The Company asks us to declare that "there is no valid impairment rating from which to decide the impairment rating issue" and to remand this portion of the case to the Division for a new dispute-resolution process. Because former rule 130.102(g) is valid, and because the Company did not have a "pending dispute" within the meaning of the rule, for the reasons discussed above, the

---

[9] It is fair to say that rule 124.3(e) evinces a "rolling deadline" insofar as a carrier would be allowed to pay bills for treatment that exceeded the scope of the compensable injury without waiving its rights to contest *future* medical bills for extent of injury as they come in. In other words, a carrier's "inaction" or lack of diligent review of submitted medical bills before paying them would not foreclose its ability, when presented with another bill some time in the future, to contest *that treatment* as beyond the scope of the compensable injury.

[10] We note, however, that extent-of-injury contests about *past* medical bills—*i.e.*, bills that the carrier has received for which extent-of-injury contests have not been filed within the time allowed by rule 124.3(e)—are likely barred by the rule. *See* 28 Tex. Admin. Code 124.3(e) (2009).

[11] In 2005, the legislature added a procedure to define the extent of a compensable injury. *See* Act of May 20, 2005, 79th Leg., R.S., ch. 265, § 3.085, 2005 Tex. Gen. Laws 469, 511-12 (codified at Tex. Lab. Code Ann. § 408.0042 (West 2006)). We need not speculate about the interplay of rule 124.3(e) and section 408.0042. We note only that a medical exam conducted under section 408.0042, had that option existed at the time of Toberny's surgery, would have forestalled many of the issues presented in this appeal.

18

Division did not err in holding that the Company had waived its rights to contest this issue, nor did the trial court err in affirming the Division. We overrule the Company's first issue.

The Company notes that expert-witness testimony is needed to establish causation as to medical conditions outside the knowledge of normal individuals. We need not reach this issue because former rule 130.102(g) bars the Company from contesting Toberny's finalized impairment. We overrule the Company's second issue.

In its third and fourth issues, the Company claims that Toberny is not entitled to supplemental income benefits for the ninth and tenth quarters and that she is not entitled to attorney's fees for defending the Company's suit against her in district court and its appeal in this Court. Supplemental income benefits are payable to injured workers whose impairment ratings are 15 percent or greater from a compensable injury. *See* Tex. Lab. Code Ann. § 408.142(a) (West 2006). For the reasons stated above, we affirm the Division's determination that Toberny's impairment rating is 25 percent; therefore, the Company's third issue is overruled. Attorney's fees are awarded to a claimant when an insurance carrier appeals a decision of the Division and the claimant "prevails on an issue on which judicial review is sought by the insurance carrier in accordance with the limitation of issues contained in Section 410.302." *Id.* § 408.221(c). Since Toberny is the prevailing party in both her suit for judicial review and this appeal, the Company is required to pay her reasonable and necessary attorney's fees.[12] We overrule the Company's fourth issue.

---

[12] The Company does not contest the amount of attorney's fees awarded by the trial court.

19

**CONCLUSION**

Having overruled the Company's four issues on appeal, we affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed on Motion for Rehearing

Filed:   March 19, 2010